# MARSHALL, SUPERINTENDENT, SOUTHERN OHIO CORRECTIONAL FACILITY *v.* LONBERGER

No. 81–420.  Argued October 5, 1982—Decided February 22, 1983

REHNQUIST, J., delivered the opinion of the Court, in which BURGER, C. J., and WHITE, POWELL, and O'CONNOR, JJ., joined. BRENNAN, J., filed a dissenting opinion, in which MARSHALL, J., joined, *post*, p. 439. BLACKMUN, J., filed a dissenting opinion, *post*, p. 447. STEVENS, J., filed a dissenting opinion, in which BRENNAN, MARSHALL, and BLACKMUN, JJ., joined, *post*, p. 447.

*Richard David Drake*, Assistant Attorney General of Ohio, argued the cause for petitioner. With him on the briefs were *William J. Brown*, Attorney General, and *Simon B. Karas*, *Dain N. De Veny*, and *Dennis L. Sipe*, Assistant Attorneys General.

*John Czarnecki*, by appointment of the Court, 455 U. S. 917, argued the cause and filed a brief for respondent.

JUSTICE REHNQUIST delivered the opinion of the Court.

The issue here is whether the Due Process Clause of the Fourteenth Amendment requires the vacation of respondent's Ohio murder conviction. The United States Court of Appeals for the Sixth Circuit, which granted respondent's petition for a writ of habeas corpus, *Lonberger* v. *Jago*, 635 F. 2d 1189 (1980), and *Lonberger* v. *Jago*, 651 F. 2d 447 (1981), held that it did. The Court of Appeals held that respondent's plea of guilty to a previous Illinois felony charge, offered and admitted into evidence at his Ohio murder trial, was invalid under *Boykin* v. *Alabama*, 395 U. S. 238 (1969). It went on to hold that the admission into evidence of the Illinois conviction at the Ohio trial rendered respondent's ensuing conviction in that proceeding unconstitutional under this Court's decision in *Burgett* v. *Texas*, 389 U. S. 109 (1967). The State claims that the Court of Appeals exceeded its authority, under our holding in *Sumner* v. *Mata*, 449 U. S. 539 (1981), in concluding that the prior Illinois conviction was invalid. It also contends that even if the Court of Appeals were warranted in so concluding, the admission of that conviction at the Ohio murder trial did not render the Ohio conviction constitutionally infirm. We granted certiorari to consider, *inter alia*, the interrelationship between *Boykin* v. *Alabama, supra*, and *Henderson* v. *Morgan*, 426 U. S. 637 (1976).

I

There is apparently no dispute with respect to the operative facts which led to respondent's indictment and convic-

tion for the murder of Charita Lanier in Toledo, Ohio, on the evening of January 29, 1975. Lanier was brutally murdered in the living room of her home during that evening; blood stains led from the living room to the kitchen, where the victim's partially clothed body was found in a freezer. An autopsy revealed that the victim bled to death after her throat had been slashed, and a bent, blood-stained knife found near the scene of the crime was identified as the murder weapon. The victim's clothing was torn and sperm was detected in her vaginal canal.

The morning after the murder, the victim's children told police that respondent, Robert Lonberger, had been at their home the previous evening. After the children had been sent to their upstairs bedroom, they heard their mother scream. When there was no response to his questions, the older child left his bedroom and went downstairs. The lights were out and when the child attempted to turn them on respondent grabbed his hand; he ordered the child back to bed. A pack of cigarettes of respondent's brand was found in the house and blood-stained articles of clothing were discovered in his possession.

Respondent was indicted by a state grand jury on two counts of "aggravated murder." The first count charged that respondent had murdered Lanier with "prior calculation and design," in violation of Ohio Rev. Code Ann. § 2903.01(A) (1975). The second count charged respondent with murder while committing rape, in violation of Ohio Rev. Code Ann. § 2903.01(B) (1975).[1] Both counts of aggravated murder included a "specification," described below, in which the prosecution alleged that respondent previously had been convicted of an "offense of which the gist was the purposeful

---

[1] Both the first and the second counts of aggravated murder, and the accompanying specifications, were submitted to the jury. No verdict was returned as to the first count or the specification accompanying that charge, and neither is relevant to our decision.

killing of or attempt to kill another." Ohio Rev. Code Ann. § 2929.04(A)(5) (1975).[2]

Respondent pleaded not guilty to the charges, and the State sought at trial to prove the specification of prior conviction for attempt to kill by introducing the record of a conviction of respondent in the Circuit Court of Cook County, Ill. It is the introduction of this conviction into evidence in the Ohio murder trial which has been the focus of constitutional objection on the part of respondent since that time, and upon which the Court of Appeals for the Sixth Circuit based its conclusion that respondent's conviction was constitutionally infirm. Because of its central role in this litigation, we find it desirable to describe in some detail the evidence before the Ohio court relating to this prior conviction.

It is fair to say that from the time the State first offered the record of the Illinois conviction until the present time, the opposing parties have never agreed as to the historical facts surrounding the acceptance of respondent's plea of guilty to an indictment returned by a grand jury in the Circuit Court of Cook County, Ill., some three years before he was tried on the Ohio murder charge. The State offered in evidence at the Ohio trial a copy of the grand jury indictment forming the basis for the Illinois charge, a certified copy of an Illinois record called a "conviction statement," and the transcript of a hearing in the Circuit Court of Cook County occurring at the time respondent pleaded guilty.

---

[2] Under the Ohio statute, the death sentence could be imposed only for the crime of aggravated murder, Ohio Rev. Code Ann. § 2929.03 (1975). Even as to aggravated murder, the prosecution was required separately to allege a specification and prove beyond a reasonable doubt the aggravating circumstance contained in the specification, § 2929.03(C). If the jury found the defendant guilty of both aggravated murder and the specification, then the trial judge was required to hold a sentencing hearing where the defendant could show mitigating circumstances, §§ 2929.03(D) and 2929.04. If no mitigating circumstances were found, the judge was required to impose the death sentence; a mandatory life sentence applied if mitigating circumstances were shown.

These documents show that respondent was indicted by the Cook County grand jury in May 1971 on four counts: aggravated battery against Dorothy Maxwell, aggravated battery with a deadly weapon against Dorothy Maxwell, intentionally and knowingly attempting to kill Dorothy Maxwell by cutting her with a knife, and aggravated battery against Wendtian Maxwell with a deadly weapon. The "conviction statement," prepared and authenticated by the Circuit Court of Cook County, recited in pertinent part that respondent was indicted for "AGGRAVATED BATTERY, ETC.," that on March 10, 1972, respondent withdrew an earlier plea of not guilty and entered a plea of guilty, and that after the court "fully explained to the Defendant . . . before the entry of said PLEA OF GUILTY, the consequences of entering such PLEA OF GUILTY, the said Defendant still persisted in his PLEA OF GUILTY in manner and form as charged in the indictment in this cause." App. 5. The third record offered in evidence in the Ohio proceedings is the transcript of the colloquy at the time of sentencing in the Circuit Court of Cook County, Ill., *id.*, at 6–15. It contains the following relevant exchanges at a time when the sentencing judge, respondent, respondent's attorney, and the prosecuting attorney were shown to be present in open court:

"THE COURT: In other words, you are pleading guilty, that you did on August 25, 1968, commit the offense of aggravated battery on one Dorothy Maxwell, and that you did on the same date attempt on Dorothy Maxwell, with a knife, is that correct?

"THE DEFENDANT: Yes, sir.

"THE COURT: And you did on the same date commit the offense of aggravated battery on one Wendtian Maxwell, is that correct?

"That is what you are pleading to, sir?

"THE DEFENDANT: Yes, sir.

"THE COURT: And understand by pleading guilty to this indictment you are waiving your right to a trial by this Court or trial by this Court and a jury?

"THE DEFENDANT: Yes.

.          .          .          .          .

"THE COURT: Understand by pleading guilty I could sentence you from one to ten on the aggravated battery, and attempt one to twenty. So, I could sentence you to the penitentiary for a maximum of from one to forty years.

"Understand that?

"THE DEFENDANT: Yes, sir.

.          .          .          .          .

"THE COURT: What do you wish to tell me insofar as stipulation and as far as facts concerned?

"MR. RANDALL [prosecuting attorney]: Let it be stipulated by and between the parties, Indictment 71–1554, it is both sufficient in law and in fact to sustain the charges contained therein, to sustain a finding of guilty on the charges involving Robert Lonberger. . . .

"MR. XINOS [respondent's attorney]: So stipulated."

Before respondent's trial on the aggravated murder charges, the Ohio trial court conducted a hearing *in limine* to determine whether respondent's guilty plea to the Illinois attempted murder charge was voluntary. The Illinois records were offered, and respondent took the stand and submitted himself to direct and cross-examination primarily as to his recollection of the Illinois proceedings which had taken place three years earlier. At the conclusion of this hearing, the trial court made the following findings:

"The Court finds on the evidence presented that the defendant is an intelligent individual, well experienced in the criminal processes and well represented at all stages of the proceedings by competent and capable counsel in Illinois. On review of the certified copy of the Illinois

proceedings and a transcript of the plea of guilty, the Court finds that every effort was taken to safeguard and to protect the constitutional rights of the defendant. Therefore, the Court finds that the defendant intelligently and voluntarily entered his plea of guilty in the Illinois court." *Id.*, at 99–100.

Evidence of respondent's Illinois conviction was admitted at his Ohio trial, subject to an instruction that it be considered only in connection with the specification, and not as probative of guilt on the underlying murder count. The jury returned a verdict of guilty on the second count of aggravated murder, one including the specification of the prior charge of attempted murder; after a sentencing hearing in accordance with Ohio law, the trial court imposed a sentence of death.

Respondent's appeal to the Ohio Court of Appeals was partially successful; that court found as a matter of state law that the jury's finding that respondent had not only murdered Charita Lanier, but raped her as well, did not satisfy the Ohio rule relating to proof of crime by circumstantial evidence. App. to Pet. for Cert. A–38. It did uphold the jury finding that respondent was guilty of the murder of Lanier, and that the specification based on the prior Illinois conviction was adequately proved. It reversed the judgment imposing a death penalty, and directed imposition of a sentence based solely on the conviction of murder. With respect to the admissibility and evidence of the prior Illinois conviction, the Ohio Court of Appeals said:

"The transcript from the Cook County Circuit Court proceedings at which appellant changed his plea to guilty indicated that he was represented by competent counsel. When questioned by the court, appellant answered affirmatively that he was pleading guilty to 'the offense of aggravated battery on one Dorothy Maxwell, . . . attempt on Dorothy Maxwell, with a knife . . . [and] the offense of aggravated battery on Wendtian Maxwell . . . .' Appellant further affirmed that he understood that he

was waiving his right to trial and to confront witnesses, that he understood the penalties that could be imposed, that he was motivated to plead guilty by an offer of a reduced sentence, and that he had not otherwise been threatened or promised anything. Through his counsel, appellant stipulated that there were sufficient facts to sustain the charges contained in the indictment. We find from the record of this proceeding and from the record of the pre-trial hearing in the instant case, that the trial court did not err in ruling that appellant's guilty plea was voluntarily and knowingly made and that the evidence of the prior conviction should be submitted to the jury." *Id.*, at A–42.

## II

It was the record of these proceedings in the Ohio state courts that formed the basis of respondent's application for federal habeas in the United States District Court for the Northern District of Ohio. The District Court denied relief, finding that "from a review of the record, this Court is satisfied that an ordinary person would have understood the nature of the charges to which petitioner was pleading guilty." *Id.*, at A–31. The Court of Appeals for the Sixth Circuit reversed the judgment of the District Court, and ordered that a writ of habeas corpus issue. *Lonberger* v. *Jago*, 635 F. 2d 1189 (1980). We granted certiorari, vacated the judgment of the Court of Appeals, and remanded for reconsideration in the light of *Sumner* v. *Mata*, 449 U. S. 539 (1981). *Marshall* v. *Lonberger*, 451 U. S. 902 (1981). On remand the Court of Appeals adhered to its previous decision. *Lonberger* v. *Jago*, 651 F. 2d 447 (1981). We again granted certiorari, 454 U. S. 1141 (1982), and we now reverse the judgment of the Court of Appeals.

The Court of Appeals, referring to its earlier opinion, stated:

"The basis for our judgment was that Lonberger's 1972 guilty plea to attempted murder was not demonstrably

an intelligent one, and was therefore invalid under federal constitutional standards. This conclusion is directly contrary to the conclusions of both of the Ohio courts that considered the question of the validity of Lonberger's 1972 plea. We now expressly hold that these factual determinations by the Ohio courts are not fairly supported by the records that were before them. This we are empowered to do by 28 U. S. C. § 2254(d)(8). *Sumner* v. *Mata, supra,* requires that federal courts state their rationales for exercise of this power.

"The basis for our disagreement with the factual determinations of the state courts can be briefly stated. The question of an effective waiver of a federal constitutional right is governed by federal standards. *Boykin v. Alabama, supra,* 395 U. S. at 243 . . . . A guilty plea, which works as a waiver of numerous constitutional rights, cannot be truly voluntary if the defendant 'has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt.' *Henderson v. Morgan,* 426 U. S. 637, 645 n. 13 . . . (1976). *Accord, Smith v. O'Grady,* 312 U. S. 329, 334 . . .. (1941).

"The transcript of Lonberger's 1972 plea is inadequate to show that Lonberger was aware that he was pleading guilty to a charge of attempted murder." 651 F. 2d, at 449 (footnote omitted).

We entirely agree with the Court of Appeals for the Sixth Circuit that the governing standard as to whether a plea of guilty is voluntary for purposes of the Federal Constitution is a question of federal law, *Henderson* v. *Morgan,* 426 U. S. 637 (1976); *Boykin* v. *Alabama,* 395 U. S. 238 (1969), and not a question of fact subject to the requirements of 28 U. S. C. § 2254(d). But the questions of historical fact which have dogged this case from its inception—what the Illinois records show with respect to respondent's 1972 guilty plea, what other inferences regarding those historical facts the Court of

Appeals for the Sixth Circuit could properly draw, and related questions—are obviously questions of "fact" governed by the provisions of § 2254(d).

Section 2254(d) establishes a presumption of correctness for "a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia. . . ." One of the eight exceptions to this presumption of correctness, and the one relied upon by the Court of Appeals in this case, is where the federal habeas court, reviewing the state-court record offered to support the factual finding, "on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record." 28 U. S. C. § 2254(d)(8).

In its treatment of the state courts' factual findings, the Court of Appeals failed in at least one major respect to accord those determinations the "high measure of deference," *Sumner* v. *Mata, supra,* to which they are entitled. This deference requires that a federal habeas court more than simply disagree with the state court before rejecting its factual determinations. Instead, it must conclude that the state court's findings lacked even "fair support" in the record. The Court of Appeals' treatment of the issue of respondent's credibility failed to satisfy this standard. Following a recital of the findings of the Ohio trial court, the Court of Appeals for the Sixth Circuit states that "[n]o explicit findings were made concerning Lonberger's credibility as a witness." 651 F. 2d, at 448. Likewise, the Court of Appeals wrote:

"At the pretrial hearing, Lonberger testified that he 'copped out to aggravated battery' in 1972, but had no knowledge of other charges. The Ohio prosecutors attempted to discredit this testimony by introducing copies of the 1972 indictment charging Lonberger with 'the offense of attempt.' Lonberger denied that he had ever

seen or read this indictment. The prosecutors sought to imply by their questioning of Lonberger that he must have heard of the 'attempt' charge either at his arraignment or in conversation with his attorneys. Lonberger testified that he had not, and the state produced no contrary evidence." *Id.*, at 449–450 (footnote omitted).

Finally, the Court of Appeals explicitly credited Lonberger's testimony in a footnote rejecting the State's reliance on *Henderson* v. *Morgan, supra.* 651 F. 2d, at 450, n. 3.

We are unsure whether the Court of Appeals' reassessment of the effect of respondent's testimony at the Ohio state trial court hearing was undertaken because of the failure of the trial court to make express findings as to respondent's credibility, or whether the Court of Appeals for the Sixth Circuit felt that it should assess for itself the weight that such evidence should have been accorded by the state trial court. In either event, we hold that it erroneously applied the "fairly supported by the record" standard enunciated in 28 U. S. C. § 2254(d).

In *LaVallee* v. *Delle Rose*, 410 U. S. 690 (1973), we dealt with a state-court hearing in which the trial judge likewise failed to make express findings as to the defendant's credibility. We held that because it was clear under the applicable federal law that the trial court would have granted the relief sought by the defendant had it believed the defendant's testimony, its failure to grant relief was tantamount to an express finding against the credibility of the defendant. We think the same is true in the present case. The assumption referred to in *Townsend* v. *Sain*, 372 U. S. 293, 314–315 (1963), quoted in *LaVallee* v. *Delle Rose, supra*, at 694, "that the state trier of fact applied correct standards of federal law to the facts . . ." leads inevitably to a similar conclusion here. Had the Ohio trial court credited respondent's insistence that he had only been advised of or been aware of the battery charge at the time he pleaded guilty in Illinois, the Ohio trial court would have surely refused to allow the record of the Illinois conviction in evidence to prove the specification of

attempted murder. The trial court's ruling allowing the record of conviction to be admitted in evidence in support of the specification is tantamount to a refusal to believe the testimony of respondent.[3]

The Court of Appeals' reliance on respondent's testimony, discussed above, and the fact that "the state produced no contrary evidence," are quite wide of the mark for purposes of deciding whether factual findings are fairly supported by the record. Title 28 U. S. C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them. In *United States* v. *Oregon Medical Society*, 343 U. S. 326 (1952), commenting on the deference which this Court gave to the findings of a District Court on direct appeal from a judgment in a bench trial, we stated:

> "As was aptly stated by the New York Court of Appeals, although in a case of a rather different substantive nature: 'Face to face with living witnesses the original trier of the facts holds a position of advantage from which appellate judges are excluded. In doubtful cases the exercise of his power of observation often proves the most accurate method of ascertaining the truth. . . . How can we say the judge is wrong? We never saw the witnesses. . . . To the sophistication and sagacity of the trial judge the law confides the duty of appraisal.' *Boyd* v. *Boyd*, 252 N. Y. 422, 429, 169 N. E. 632, 634." *Id.*, at 339.

We greatly doubt that Congress, when it used the language "fairly supported by the record" considered "as a

---

[3] The likelihood that the state trial court would have reached such a conclusion is not diminished by the facts before us. The state courts found that respondent was represented by two lawyers who were competent and capable, and the record suggests that one of the two was a nationally respected public defender; either of them might well have informed respondent of the charges contained in the indictment against him. Moreover, respondent appeared in several court proceedings in connection with his attack on Dorothy Maxwell, at any one of which the indictment could have been read to him.

whole" intended to authorize broader federal review of state-court credibility determinations than are authorized in appeals within the federal system itself. While disbelief of respondent's testimony may not form the basis for any affirmative findings by the state trial court on issues with respect to which the State bore the burden of proof, it certainly negates any inferences favorable to respondent such as those drawn by the Court of Appeals, based on his testimony before the Ohio trial court.

Thus, the factual conclusions which the federal habeas courts were bound to respect in assessing respondent's constitutional claims were the contents of the Illinois court records, the finding of the Ohio trial court that respondent was "an intelligent individual, well experienced in the criminal processes and well represented at all stages of the proceedings by competent and capable counsel in Illinois," *supra*, at 428, and the similar conclusion of the Ohio Court of Appeals, and the inferences fairly deducible from these facts.[4] These records and findings show, with respect to the attempted murder charge, that it was one of the four counts contained in the Cook County indictment returned against respondent. The "conviction certificate" recites that at the time respondent pleaded guilty, he was duly advised by the court of the consequences of pleading guilty, and nonetheless adhered to his plea. The transcript, as appears from its face and as found by the Ohio Court of Appeals, shows that respondent answered affirmatively that he was pleading guilty, *inter alia*, to the offense of "attempt on Dorothy Maxwell, with a knife . . . ." Respondent's attorney, in his presence,

---

[4] The method by which court records from one State are to be authenticated and proved in the courts of a second State, the weight to be given those records, and the extent to which they may be impeached by later oral testimony, are all matters generally left to the laws of the States. A State "is free to regulate the procedure of its courts in accordance with its own conception of policy and fairness unless in so doing it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Snyder* v. *Massachusetts*, 291 U. S. 97, 105 (1934).

stipulated that the indictment was "both sufficient in law and in fact to sustain the charges contained therein, to sustain a finding of guilty on the charges involving [respondent]." *Ibid.* There is perhaps an arguable conflict between the recitation of the "conviction certificate" and the transcript by reason of the latter's omission of the word "murder" after the word "attempt" in the colloquy between respondent and the court. For our purposes we assume that the transcript version, which is more favorable to respondent, was accurate.

It is well established that a plea of guilty cannot be voluntary in the sense that it constitutes an intelligent admission that the accused committed the offense unless the accused has received "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." *Smith* v. *O'Grady*, 312 U. S. 329, 334 (1941), quoted in *Henderson* v. *Morgan*, 426 U. S., at 645. In *Henderson* v. *Morgan*, we went on to make the following observations:

> "Normally the record contains either an explanation of the charge by the trial judge, or at least a representation by defense counsel that the nature of the offense has been explained to the accused. Moreover, even without such an express representation, it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit." *Id.*, at 647.

Applying this standard[5] to the factual determinations arising from the state-court proceedings which were "fairly sup-

---

[5] The Sixth Circuit sought to distinguish *Henderson* on several grounds, none of which withstands analysis. First, it relied on "Lonberger's testimony that his lawyers did not discuss the charge of 'attempt' with him." This, however, requires rejection of the state courts' necessary conclusions as to Lonberger's testimony, which the federal habeas court was unjustified in doing. *Supra*, at 433–434. In addition, the Court of Appeals

ported by the record" within the meaning of 28 U. S. C. § 2254(d), we disagree with the Court of Appeals for the Sixth Circuit in its conclusion that respondent's plea to the Illinois charge was not "voluntary" in the constitutional meaning of that term. We think that the application of the principles enunciated in *Henderson* v. *Morgan, supra,* lead inexorably to the conclusion that the plea *was* voluntary. We think a person of respondent's intelligence and experience in the criminal justice system would have understood, from the statements made at the sentencing hearing recorded in the transcript before us, that the presiding judge was inquiring whether the defendant pleaded guilty to offenses charged in the indictment against him. This is evident from the references in the proceeding by the judge to the fact the respondent was "pleading guilty to this indictment" and by respondent's counsel's stipulation that the indictment sustained the plea of guilty. *Supra,* at 427–428. Under *Henderson,* respondent must be presumed to have been informed, either by his lawyers or at one of the presentencing proceedings, of the charges on which he was indicted. Given this knowledge of the indictment and the fact that the indict-

---

thought that the fact that respondent had changed lawyers following the return of the grand jury indictment somehow made it less likely that the presumption would operate. The mere fact of a change in representation, if it has any probative value, would suggest to us that it was even more likely than usual that one of the two lawyers informed respondent of the contents of the indictment. The Court of Appeals also relied on what it thought was a vague description of the attempt-to-kill offense in the indictment and the sentencing proceedings. We cannot agree with the Court of Appeals' apparent implication that the indictment failed to provide respondent's counsel with sufficient information to enable them to describe to him the charges he faced: indeed, counsel stipulated that the indictment was "sufficient in law and fact" to sustain the charges against respondent. Finally, the Court of Appeals thought it "questionable whether [the *Henderson* presumption] is proper in a case . . . in which a prior conviction forms an essential element of a later crime." Whatever may be the case otherwise, there is surely no obstacle to use of the presumption in a case such as this, when the defendant is challenging a conviction which does not have a prior conviction as an element.

ment contained no other attempt charges, respondent could only have understood the judge's reference to "attempt on Dorothy Maxwell, with a knife" as a reference to the indictment's charge of attempt to kill. It follows, therefore, both that respondent's argument that his plea of guilty was not made knowingly must fail, and that the admission in the Ohio murder trial of the conviction based on that plea deprived respondent of no federal right. *Spencer* v. *Texas,* 385 U. S. 554 (1967).[6] The judgment of the Court of Appeals is accordingly

*Reversed.*

---

[6] In *Spencer,* which we reaffirm, the Court upheld a conviction despite the introduction at the guilt-determination stage of trial of a defendant's prior conviction for purposes of sentence enhancement. Central to our decision was the fact that the Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules: "It has never been thought that [decisions under the Due Process Clause] establish this Court as a rule-making organ for the promulgation of state rules of criminal procedure." 385 U. S., at 564. Applying these principles, we observed that the Texas procedural rules permitting introduction of the defendant's prior conviction did not pose a sufficient danger of unfairness to the defendant to offend the Due Process Clause, in part because such evidence was accompanied by instructions limiting the jury's use of the conviction to sentence enhancement. This analysis remains persuasive; as recognized in *Parker* v. *Randolph,* 442 U. S. 62, 73 (1979) (REHNQUIST, J.), the "crucial assumption" underlying the system of trial by jury "is that juries will follow the instructions given them by the trial judge. Were this not so, it would be pointless for a trial court to instruct a jury, and even more pointless for an appellate court to reverse a criminal conviction because the jury was improperly instructed." Cf. *Sandstrom* v. *Montana,* 442 U. S. 510 (1979). *Spencer* also observed that in cases where documentary evidence is used to prove the prior crime, the evidence seldom, if ever, will be so inflammatory or "devastating," *Parker* v. *Randolph, supra,* at 74–75, that the jury will be unable to follow its instructions. See, *e. g., Bruton* v. *United States,* 391 U. S. 123 (1968). And, of course, if the jury considers a defendant's prior conviction only for purposes of sentence enhancement no questions of fairness arise.

JUSTICE STEVENS' dissent appears to rest on a view that the common law regarded the admission of prior convictions as grossly unfair and subject to some sort of blanket prohibition. In fact, the common law was far more ambivalent. See, *e. g.,* Stone, Exclusion of Similar Fact Evidence:

JUSTICE BRENNAN, with whom JUSTICE MARSHALL joins, dissenting.

I join JUSTICE STEVENS' dissent. I write separately only to emphasize that more is subject to question in the Court's

America, 51 Harv. L. Rev. 988 (1938). Alongside the general principle that prior convictions are inadmissible, despite their relevance to guilt, 1 J. Wigmore, Evidence § 194 (3d ed. 1940), the common law developed broad, vaguely defined exceptions—such as proof of intent, identity, malice, motive, and plan—whose application is left largely to the discretion of the trial judge, see *Spencer* v. *Texas*, 385 U. S., at 560–561. In short, the common law, like our decision in *Spencer*, implicitly recognized that any unfairness resulting from admitting prior convictions was more often than not balanced by its probative value and permitted the prosecution to introduce such evidence without demanding any particularly strong justification.

Here, as in *Spencer*, the trial judge gave a careful and sound instruction requiring the jury to consider respondent's prior conviction only for purposes of the specification. The extent to which the jury can and does consider limiting instructions, or for that matter any instructions, has been fully considered in cases such as *Spencer, supra, Bruton, supra, Parker, supra*, and *Burgett* v. *Texas*, 389 U. S. 109 (1967). The matter was put to rest for cases such as this by our decision in *Spencer, supra*, in which the Court quoted the remark of Justice Cardozo in *Snyder* v. *Massachusetts*, 291 U. S., at 105, that a state rule of law "does not run foul of the Fourteenth Amendment because another method may seem to our thinking to be fairer or wiser or to give a surer promise of protection to the prisoner at the bar."

Remarking on the state of the law of evidence with respect to reputation in criminal cases, the Court in *Michelson* v. *United States*, 335 U. S. 469, 486 (1948), said:

"We concur in the general opinion of the courts, textwriters and the profession that much of this law is archaic, paradoxical and full of compromises and compensations by which an irrational advantage to one side is offset by a poorly reasoned counterprivilege to the other. But somehow it has proved a workable even if clumsy system when moderated by discretionary controls in the hands of a wise and strong trial court. To pull one misshapen stone out of the grotesque structure is more likely simply to upset its present balance between adverse interests than to establish a rational edifice."

If this Court was thus willing to defer to "accumulated judicial experience" at the expense of "abstract logic," *id.*, at 487, in a case such as *Michelson* which arose in the federal court system, the Due Process Clause as construed in *Spencer* surely cannot require a State to do more.

opinion than its penultimate sentence.    See *ante*, at 438, and n. 6.

I

The bulk of the Court's opinion is devoted not to defending *Spencer* v. *Texas*, 385 U. S. 554 (1967), but rather to establishing that this case is not governed on all fours by *Burgett* v. *Texas*, 389 U. S. 109 (1967).    *Burgett* held, notwithstanding *Spencer*, that it was inherently prejudicial to admit an unconstitutional, uncounseled prior conviction against a defendant at a trial on a new offense, regardless of the purpose for which it had been introduced or of any limiting instructions given to the jury.    389 U. S., at 115.[1]

The proceedings below concerned themselves exclusively with the question whether respondent's 1972 conviction for attempted murder in Illinois was the type of conviction which, under *Burgett*, could not have been admitted against him in the later Ohio trial for any purpose, regardless of the curative instructions or procedural protections Ohio might

---

[1] Whether or not *Spencer* may still be read as broadly as it was written, the two cases are reconcilable.    *Spencer* took a balancing approach to interpreting the requirements of the Fourteenth Amendment's Due Process Clause, and held only that the risk of prejudice alone from admitting a valid prior conviction—provided the jury was given proper limiting instructions—did not necessarily outweigh the legitimate benefits the State might derive from the procedures that required admitting the conviction.    See 385 U. S., at 562–563.    *Spencer* expressly distinguished situations in which admission of the prior conviction, in addition to exposing the defendant to a risk of prejudice, might compromise a specific federal right.    *Id.*, at 564–565.    *Burgett* recognized that admitting *unconstitutional* prior convictions did compromise vital federal rights.    Furthermore, the conviction admitted into evidence in *Burgett* was not merely unconstitutional, it was also unreliable evidence that the defendant had in fact committed the prior offense, because the defendant had not had the benefit of the advice of counsel.    These additional elements of unconstitutionality and unreliability tip the delicate balance struck by *Spencer*.    Thus, *Burgett* unquestionably states good law: where a defendant's prior conviction is unconstitutional or unreliable, it may not be introduced in evidence against that defendant for any purpose.

have adopted. The Court of Appeals for the Sixth Circuit granted respondent's habeas petition solely on the ground that the Illinois conviction admitted in evidence at his Ohio trial had been obtained unconstitutionally, because respondent had entered a guilty plea without notice that he was pleading guilty to an attempted murder charge as well as an aggravated battery charge. A defendant's failure to receive notice of the charge to which he pleads guilty renders his plea invalid and a conviction based upon it unconstitutional. See *Henderson* v. *Morgan*, 426 U. S. 637 (1976); *Boykin* v. *Alabama*, 395 U. S. 238 (1969). The conviction is also completely unreliable, since it rests entirely on a guilty plea that cannot be taken as an admission that the defendant indeed committed the elements of the offense. So if the Court of Appeals for the Sixth Circuit was right about respondent's failure to receive notice in Illinois, the conviction should not have been admitted into evidence in Ohio, his Ohio conviction was invalid under *Burgett*, and the court properly granted his habeas corpus petition.

## II

Both JUSTICE REHNQUIST's opinion for the Court, *ante*, at 426–430, and JUSTICE STEVENS' dissent, *post*, at 457, show why the factual correctness of the Court of Appeals for the Sixth Circuit's conclusion as to notice is a close question. The records of respondent's guilty plea and conviction in Illinois leave the matter in considerable doubt. The formal statement of conviction preserved in Illinois records states only that respondent was found guilty of "AGGRAVATED BATTERY, ETC." App. 5. The transcript of respondent's guilty plea proceedings shows that the trial judge asked him to admit, "that you did on August 25, 1968, commit the offense of aggravated battery on one Dorothy Maxwell, and that you did on the same date attempt on Dorothy Maxwell, with a knife," and he answered, "Yes, sir." *Id.*, at 8. The judge also mentioned the possible sentence for "attempt." *Id.*, at 9. In the absence of more, neither of these records

clearly establishes that respondent had notice that he was pleading guilty to attempted murder as well as aggravated battery. On the other hand, respondent was represented by competent counsel in Illinois, and he was arraigned on an indictment that clearly charged him with attempted murder.

The Court resolves this tension on the basis of rules of law derived from *Sumner* v. *Mata*, 449 U. S. 539 (1981), and on dictum in *Henderson* v. *Morgan, supra.* *Henderson* states that in cases such as this, where the record does not clearly show that the defendant received notice, "it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit." *Id.,* at 647. The Court thus holds:

> "Under *Henderson,* respondent must be presumed to have been informed, either by his lawyers or at one of the presentencing proceedings, of the charges on which he was indicted. Given this knowledge of the indictment and the fact that the indictment contained no other attempt charges, respondent could only have understood the judge's reference to 'attempt on Dorothy Maxwell, with a knife' as a reference to the indictment's charge of attempt to kill." *Ante,* at 437–438.

Under *Sumner* v. *Mata, supra,* and 28 U. S. C. § 2254(d) (8), the Court of Appeals for the Sixth Circuit may have been required to accept the inference that respondent was informed of the charges against him, if it was drawn by the Ohio Court of Appeals, as fairly supported by the record.[2]

---

[2] In the absence of proof to the contrary, *Henderson* does support a presumption that respondent's Illinois counsel informed him at some point of the charges against him. In this case, however, respondent submitted proof to the contrary—he testified at length that he had never been told, by his lawyer or by the court, that he was being charged with attempted murder. See App. 24–25, 85–94 (transcript of hearing before Ohio trial court). Under the normal rule applying in federal courts, a judge-made "presumption" does no more than require the opposing party to go forward

But, assuming the Ohio court drew such an inference (it did not say so), the inference fails to resolve this case. Both respondent's testimony and the applicable law establish that, although he may have known he had been *charged* with attempted murder, it does not necessarily follow that he knew he was *pleading guilty* to attempted murder.

Testifying at a pretrial hearing in Ohio, respondent claimed that he was told of a plea bargain whereby he would plead guilty only to aggravated battery and be sentenced accordingly. He testified that his Illinois lawyer told him "[t]hat he had talked it over with the State's attorney and that again we would go out and the judge would say a lot of things but it was just for the record's sake and that we was copping out to aggravated battery from two to four, that was the agreement." App. 24; cf. *id.*, at 84–85. It is hard to judge respondent's credibility on a cold record, but this statement is hardly incredible on its face. The State made no effort to impeach it, unlike respondent's claim that he was never told he had been charged with attempted murder, see *id.*, at 27–75, and the Ohio Court of Appeals did not address it, see App. to Pet. for Cert. A–40—A–42; *ante*, at 429–430. Apart from the Illinois trial judge's ambiguous reference to "attempt . . . with a knife," nothing at respondent's guilty plea proceeding would have informed him that he was doing more than going forward with the deal that had been proposed to him. He was sentenced to two to four years in prison—two years is the minimum sentence for aggravated battery[3]—and his con-

---

with evidence to rebut or meet it. See Fed. Rule Evid. 301; H. R. Conf. Rep. No. 93–1597, pp. 5–6 (1974). Even if the State had rebutted respondent's testimony—and it did not—respondent's showing clearly sufficed to meet any presumption created by *Henderson*. At most, then, *Henderson*'s effect on this case was to create a permissible inference that respondent had been informed of the charges against him.

[3] See Ill. Rev. Stat., ch. 38, ¶¶ 12–4(e), 1005–8–1(6) (1979). At the time respondent was sentenced in Illinois, it was not clear whether there was any minimum sentence for attempted murder. See *People* v. *Moore*, 69 Ill. 2d 520, 372 N. E. 2d 666 (1978); *People* v. *Jones*, 55 Ill. App. 3d 446,

viction statement specified no crime but "AGGRAVATED BATTERY."

More importantly, respondent's understanding that he was pleading guilty only to aggravated battery was perfectly reasonable, despite the judge's mention of "attempt." Since at least 1958, Illinois has had a state statutory and constitutional rule forbidding convictions—not merely punishments—for two offenses based on a single act. See *People* v. *King*, 66 Ill. 2d 551, 560–566, 363 N. E. 2d 838, 842–843 (1977) (discussing development of Illinois law); Illinois Criminal Code of 1961, § 1–7(m) (current version at Ill. Rev. Stat., ch. 38, ¶ 1005–8–4(a) (1979)). This rule has been applied several times to vacate one conviction when a defendant, in a single trial, has been convicted of both aggravated battery and attempted murder resulting from the same act.[4] *E. g., People ex rel. Walker* v. *Pate*, 53 Ill. 2d 485, 292 N. E. 2d 387 (1973); *People* v. *Carter*, 21 Ill. App. 3d 207, 315 N. E. 2d 47 (1974); *People* v. *Peery*, 81 Ill. App. 2d 372, 377, 225 N. E. 2d 730, 732 (1967).

Under Illinois law, therefore, respondent could not have been convicted of both "aggravated battery" and "etc." if the "etc." referred to the attempted murder of Dorothy Maxwell. Upon hearing the reference to "attempt . . . with a knife," respondent would have been warranted in thinking that the

---

455, 370 N. E. 2d 1142, 1149 (1977). Since then the Illinois Legislature has imposed a 6-year minimum. See Ill. Rev. Stat., ch. 38, ¶¶ 8–4(c)(1), 1005–8–1–(3) (1979).

[4] The Illinois indictment establishes that respondent's aggravated battery charge rested on precisely the same facts as his attempted murder charge:

"[O]n August 25th, 1968, . . . Robert Lonberger committed the offense of aggravated battery, in that he, in committing a battery on Dorothy Maxwell used a deadly weapon . . . .

"[O]n August 25th, 1968, . . . Robert Lonberger committed the offense of attempt, in that he, with intent to commit the offense of murder, intentionally and knowingly attempted to kill Dorothy Maxwell by cutting Dorothy Maxwell with a knife without lawful justification. . . ." App. 2–3.

judge was indulging in a lawyer's well-known penchant for redundancy.

The Court of Appeals for the Sixth Circuit held that the transcript of respondent's Illinois guilty plea was inadequate to show that he was aware that he was pleading guilty to attempted murder as well as aggravated battery. The Ohio Court of Appeals reached a different conclusion about the same transcript. But in finding that respondent had made a knowing and intelligent plea, the Ohio court relied completely on the facts that respondent answered "Yes" to the question described above, that he stated that he understood he was waiving his right to trial, and that his lawyers stipulated that there were sufficient facts to prove the charges in the indictment. App. to Pet. for Cert. A–42; see *ante,* at 429–430. The Court of Appeals for the Sixth Circuit's result is perfectly consistent with *Sumner*'s "presumption of correctness," see 449 U. S., at 550–551, because the Ohio Court of Appeals' findings, read in light of Illinois law or of respondent's unimpeached testimony in the Ohio trial court, fall short of establishing that respondent knew that he was pleading guilty to attempted murder.

This Court now slips a new rationale beneath the flawed determination of the Ohio court. It holds that respondent's guilty plea must have been valid if at some point, under *Henderson,* it is likely that he learned of all the charges against him.[5] Like the Ohio court, however, this Court fails to explain its leap from notice of the charges to notice of which charges were included in the guilty plea. It makes no sense whatsoever to maintain that *Henderson* required the Court

---

[5] This holding is obviously limited by *Henderson* itself, which makes clear that a habeas petitioner is free to introduce evidence rebutting the inference the Court draws in this case, and courts are free to believe that evidence. See 426 U. S., at 647. Furthermore, if there is enough evidence in the record indicating that the *Henderson* inference cannot be drawn, or that even if it can be drawn other factors indicate that the plea may not have been made with knowledge, then any state court's reliance on *Henderson* would not be fairly supported by the record.

of Appeals for the Sixth Circuit to accept an inference that respondent's counsel had explained all the charges against him, but at the same time to ignore the likelihood that his lawyer also told him that he could not be convicted of both aggravated battery and attempted murder. As a factual matter, respondent's lawyer may or may not have explained the state conviction rule to him. But the Court is left with a rule of law that makes sense only if respondent was ignorant of settled state law, for only then would the trial judge's brief reference to "attempt" seem anything but absurd.

## III

A simple, but unanswerable question of fact and a simple question of law are central to this case. Did respondent have actual knowledge that he was pleading guilty to attempted murder as well as aggravated battery in 1972? At this point, more than 10 years later and in the face of an ambiguous record, no factfinder could be completely certain that a particular answer is correct. So the crucial question becomes what makes an ambiguous record sufficient to support a state court's finding that a plea was knowing, voluntary, and intelligent. Under *Henderson*, mere absence of a recitation of all the charges at a guilty plea hearing may not be enough to render a plea unconstitutional, but in this case respondent had good reason to believe he was pleading guilty only to aggravated battery.

By dismissing part of the record, failing to confront the difference between notice of charges and notice of the charges to which one is pleading guilty, and disregarding the law of Illinois, the Court manages to fit this case within a rule of law that permits it to reverse the judgment below. And to what end this Procrustean effort? To uphold the great principle that the unique record before us was not so ambiguous as to forbid an inference that at some point respondent may have known what the charges against him were? To reaffirm that a conviction obtained under such circumstances is not so fun-

damentally unsound as to bar a zealous prosecutor from introducing it into evidence in some later prosecution, for (as JUSTICE STEVENS and JUSTICE BLACKMUN show) no good reason at all? To relieve Ohio of the burden of a single retrial? I question that this case was "certworthy." The game hardly seems worth the candle.

JUSTICE BLACKMUN, dissenting.

I join JUSTICE STEVENS' dissenting opinion, for I, too, would affirm the judgment of the United States Court of Appeals for the Sixth Circuit. It is enough for me in this case to note the utter absence of a legitimate state interest once the prosecution refused to accept respondent's proffered stipulation. That refusal revealed that the prosecution believed the indictment had prejudicial value, and it rendered nonexistent any otherwise legitimate interest the State might have had in introducing the indictment.

JUSTICE STEVENS, with whom JUSTICE BRENNAN, JUSTICE MARSHALL, and JUSTICE BLACKMUN join, dissenting.

Criminal prosecution involves two determinations: whether the defendant is guilty or innocent, and what the appropriate punishment should be if he is guilty. In most cases, these determinations are made in two stages. At the first stage, strict rules of procedure govern the order in which evidence is offered, the quality of the evidence that may be admitted, and the burden of proof that is required to establish the defendant's guilt. At the second stage, however, the rules are relaxed; a wide range of evidence concerning the defendant's character may be received by the sentencing authority even though it is entirely extraneous to the particular offense that has just been proved.

This case involves the unfairness that may result from an attempt to merge the two stages. At issue is a highly prejudicial item of evidence: an Illinois indictment charging that in 1968 the respondent had "intentionally and knowingly at-

tempted to kill Dorothy Maxwell by cutting Dorothy Maxwell with a knife without lawful justification." Everyone agrees that this evidence could not be used to prove the respondent's guilt in this case, which concerned a 1975 murder in Ohio.[1] On the other hand, if the respondent were found guilty of the Ohio murder, the evidence was certainly relevant to whether

---

[1] The common law has long deemed it unfair to argue that, because a person has committed a crime in the past, he is more likely to have committed a similar, more recent crime. See, *e. g., People* v. *White*, 14 Wend. 111, 113–114 (N. Y. Sup. Ct. 1835) (in prosecution for possession of counterfeit money, improper to introduce evidence of former conviction); *United States* v. *Burr*, 25 Fed. Cas. 187, 198 (No. 14,694) (CC Va. 1807) (Marshall, C. J.) (in prosecution for providing support to a treasonous military expedition in Virginia, improper to introduce evidence that the accused had provided the means for a treasonous military expedition in Kentucky); *King* v. *Doaks*, Quincy's Mass. Reports 90 (Mass. Sup. Ct. 1763) (in prosecution for keeping a bawdy house, improper to introduce evidence of acts of lasciviousness performed before the defendant became mistress of the house); *Hampden's Trial*, 9 How. St. Tr. 1053, 1103 (Eng. 1684) ("a person was indicted of forgery, we would not let them give evidence of any other forgeries but that for which he was indicted").

The objection to such evidence is not that the proposed inference is illogical. The objection is rather that the inference is so attractive that it will overwhelm the factfinder and create an unwarranted presumption of guilt. As Professor Wigmore explained:

"The natural and inevitable tendency of the tribunal—whether judge or jury—is to give excessive weight to the vicious record of crime exhibited, and either to allow it to bear too strongly on the present charge, or to take the proof of it as justifying a condemnation irrespective of guilt of the present charge." 1 J. Wigmore, Evidence § 194 (3d ed. 1940).

In *Michelson* v. *United States*, 335 U. S. 469 (1948), this Court observed:

"Not that the law invests the defendant with a presumption of good character . . . but it simply closes the whole matter of character, disposition and reputation on the prosecution's case-in-chief. The state may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a logical perpetrator of the crime. The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge." *Id.*, at 475–476 (footnotes omitted).

he should be given the death penalty.[2]   The reason this case is before us today is that the Ohio trial court allowed the prosecutor to present the evidence to the jury *before* it decided whether the respondent was guilty of the 1975 crime.

The Court finds no constitutional objection to this procedure because it is satisfied that the evidence could legitimately be used in determining the appropriate penalty, and because the jury was instructed not to consider the evidence as probative of the respondent's guilt.   In my opinion the constitutional question is more difficult than the Court acknowledges.   It requires, I believe, a re-examination of this Court's decision in *Spencer* v. *Texas*, 385 U. S. 554 (1967), as well as more attention to the prosecutorial tactics disclosed by this record.

I

The structure for constitutional analysis in this area was established in 1967, when this Court twice considered the constitutionality of convictions under the Texas recidivist statute.   Under the Texas procedure, the prosecutor was allowed to offer evidence of the defendant's guilt and evidence of his prior criminal record in a single proceeding, so long as the jury was instructed that the defendant's past convictions were not to be taken into account in assessing his guilt or innocence under the current indictment.

In *Spencer* v. *Texas,* a bare majority of the Court concluded that such a procedure did not "fall below the minimum level the Fourteenth Amendment will tolerate."   *Id.,* at 569 (Stewart, J., concurring).   The Court acknowledged

---

[2] Under Ohio law, the death penalty could not be imposed unless the respondent had been convicted of "an offense of which the gist was the purposeful killing or attempt to kill another."   Ohio Rev. Code Ann. § 2929.04(A)(5) (1975).   An Illinois "conviction statement" shows that the respondent pleaded guilty in 1972 to "aggravated battery, etc."   The prosecutor asserted that in fact the respondent had pleaded guilty to attempted murder.   Although the conviction statement and indictment were clearly not sufficient, standing alone, to prove that assertion beyond a reasonable doubt, they were at least relevant to the inquiry.

that prior-crimes evidence "is generally recognized to have potentiality for prejudice." *Id.*, at 560. Nevertheless, it held that this potentiality did not distinguish recidivist trials from other criminal trials in which prior-crime evidence was admissible.

The majority noted that, under the rule of *Delli Paoli* v. *United States*, 352 U. S. 232 (1957), a hearsay statement that was inadmissible against a defendant could nevertheless be introduced into evidence when the defendant was being tried jointly with the declarant, provided that the jury was instructed not to consider the statement in evaluating the defendant's guilt. The Court observed that under *Delli Paoli* "all joint trials, whether of several codefendants or of one defendant charged with multiple offenses, furnish inherent opportunities for unfairness when evidence submitted as to one crime (on which there may be an acquittal) may influence the jury as to a totally different charge." 385 U. S., at 562. This unfairness was deemed acceptable for two reasons:

> "(1) the jury is expected to follow instructions in limiting this evidence to its proper function, and (2) the convenience of trying different crimes against the same person, and connected crimes against different defendants, in the same trial is a valid governmental interest." *Ibid.*

The Court conceded that the use of prior-crime evidence in a one-stage recidivist trial may be thought to represent "a less cogent state interest" than the state interest promoted by *Delli Paoli*. 385 U. S., at 563. Nevertheless, it held that this distinction should not lead to a different constitutional result. *Ibid.*

Two cases decided within 18 months of *Spencer* called its analytic structure into question. *Burgett* v. *Texas*, 389 U. S. 109 (1967), also involved a conviction under the Texas

recidivist statute in which the jury had been instructed "not to consider the prior offenses for any purpose whatsoever in arriving at the verdict." *Id.*, at 113 (footnote omitted). In *Burgett*, the record did not affirmatively show that the petitioner had been represented by counsel at his earlier trial. Over the dissent of three Members of the *Spencer* majority,[3] the Court reversed the conviction. The Court reasoned that the earlier conviction was "presumptively void," that the admission of such a conviction was "inherently prejudicial and we are unable to say that the instructions to disregard it made the constitutional error 'harmless beyond a reasonable doubt' within the meaning of *Chapman* v. *California*, 386 U. S. 18." 389 U. S., at 115. In a footnote the Court unequivocally rejected the notion that a jury could be expected to follow instructions to disregard prejudicial evidence of this character. The Court stated:

> "What Mr. Justice Jackson said in *Krulewitch* v. *United States*, 336 U. S. 440, 445, 453 (concurring opinion), in the sensitive area of conspiracy is equally applicable in the sensitive area of repetitive crimes, 'The naive assumption that prejudicial effects can be overcome by instructions to the jury . . . all practicing lawyers know to be unmitigated fiction.'" *Id.*, at 115, n. 7.[4]

---

[3] Justice Harlan, who had authored the Court's opinion in *Spencer*, dissented and was joined by Justice Black and JUSTICE WHITE. See 389 U. S., at 120.

[4] Compare Chief Justice Warren's observations, dissenting in part in *Spencer*:

"Of course it flouts human nature to suppose that a jury would not consider a defendant's previous trouble with the law in deciding whether he has committed the crime currently charged against him. As Mr. Justice Jackson put it in a famous phrase, '[t]he naive assumption that prejudicial effects can be overcome by instructions to the jury . . . all practicing lawyers know to be unmitigated fiction.' *Krulewitch* v. *United States*, 336 U. S. 440, 453 (concurring opinion) (1949). *United States* v. *Banmiller*, 310 F. 2d 720, 725 (CA3 1962). Mr. Justice Jackson's assessment has received

Later in the same Term the Court decided *Bruton* v. *United States*, 391 U. S. 123 (1968). Over the dissent of two Members of the *Spencer* majority,[5] the Court expressly overruled *Delli Paoli*. 391 U. S., at 126. As in *Burgett*, the Court stressed that a jury instruction is simply inadequate to ensure that a jury will disregard highly prejudicial evidence. Once again, the Court relied on Justice Jackson's *Krulewitch* opinion. 391 U. S., at 129.[6] Justice Stewart concurred,

support from the most ambitious empirical study of jury behavior that has been attemped, see H. Kalven & H. Zeisel, The American Jury 127–130, 177–180 (1966).

"Recognition of the prejudicial effect of prior-convictions evidence has traditionally been related to the requirement of our criminal law that the State prove beyond a reasonable doubt the commission of a specific criminal act. It is surely engrained in our jurisprudence that an accused's reputation or criminal disposition is no basis for penal sanctions. Because of the possibility that the generality of the jury's verdict might mask a finding of guilt based on an accused's past crimes or unsavory reputation, state and federal courts have consistently refused to admit evidence of past crimes except in circumstances where it tends to prove something other than general criminal disposition." 385 U. S., at 575.

[5] JUSTICE WHITE's dissenting opinion was joined by Justice Harlan.

[6] The Court could also have relied on another opinion written by Justice Jackson only three weeks before the *Krulewitch* case was argued. In *Michelson* v. *United States*, 335 U. S. 469 (1948), a prosecutor had introduced the defendant's prior conviction to rebut testimony that he had a reputation for being a law-abiding citizen. After first discussing the general rule that such evidence is not admissible, see n. 1, *supra*, the Court declared: "The price a defendant must pay for attempting to prove his good name is to throw open the entire subject which the law has kept closed for his benefit and to make himself vulnerable where the law otherwise shields him." 335 U. S., at 479. Presaging both the Court's later holding in *Bruton* and also identifying the common element in *Bruton* and *Burgett*, Justice Jackson wrote:

"We do not overlook or minimize the consideration that 'the jury almost surely cannot comprehend the judge's limiting instruction,' which disturbed the Court of Appeals. The refinements of the evidentiary rules on this subject are such that even lawyers and judges, after study and reflection, often are confused, and surely jurors in the hurried and unfamiliar movement of a trial must find them almost unintelligible. However, limiting instructions on this subject are no more difficult to comprehend or apply than those upon various other subjects; for example, instructions

noting that certain kinds of evidence "are at once so damaging, so suspect, and yet so difficult to discount, that jurors cannot be trusted to give such evidence the minimal weight it logically deserves, *whatever* instructions the trial judge might give." *Id.*, at 138 (emphasis in original).

The opinions in *Burgett* and *Bruton* demolished one of the two pillars that had supported the holding in *Spencer*. After *Burgett* and *Bruton*, it was plainly no longer appropriate to presume that a jury will ignore prejudicial evidence presented to it, even if the court tells it to do so. Moreover, given *Spencer*'s suggestion that the State's interest in holding a one-stage sentence enhancement proceeding may be "less cogent" than the state interest promoted in *Delli Paoli*, the other pillar was shaky at best. The case before the Court today requires us to consider what is left of that other pillar. More concretely, the question before us is whether the unfair prejudice that Ohio imposed on the respondent is justified by any valid state interest in prosecuting him in the manner it chose to employ.

## II

Under Ohio law, a person convicted of murder may not be sentenced to death unless (a) the murder was "aggravated," Ohio Rev. Code Ann. § 2929.03 (1975), (b) a "specification" is included in the indictment, § 2929.04(A), and (c) the "specification" is proved beyond a reasonable doubt, *ibid.* In this

---

that admissions of a co-defendant are to be limited to the question of his guilt and are not to be considered as evidence against other defendants, and instructions as to other problems in the trial of conspiracy charges. A defendant in such a case is powerless to prevent his cause from being irretrievably obscured and confused; but, in cases such as the one before us, the law foreclosed this whole confounding line of inquiry, unless defendant thought the net advantage from opening it up would be with him." 335 U. S., at 484–485.

It is ironic that the Court should pluck one sentence out of the *Michelson* opinion in ostensible support of its "crucial assumption" that juries always mechanically follow the instructions given them by trial judges. See *ante*, at 438–439, n. 6.

case the murder was alleged to have been "aggravated" because it was committed during a rape. And the indictment included, by way of "specification," an allegation that the respondent had previously been convicted of attempted murder in Illinois.

Before trial, the respondent moved to dismiss the specification, citing *Burgett* and arguing that the prior conviction was void because it had been based on an involuntary guilty plea. At a hearing on that motion, the State produced the Illinois indictment, the transcript of the Illinois proceedings, and the Illinois "conviction statement." It argued that the respondent must have known he was pleading guilty to attempted murder, even though the indictment was never read to him, the words "attempted murder" were never mentioned at the hearing, he was never told that he was pleading guilty to everything alleged in the indictment, he was sentenced to only two to four years of imprisonment, and the conviction statement showed only a conviction for "AGGRAVATED BATTERY, ETC." The Ohio trial judge found that the respondent had knowingly and voluntarily pleaded guilty to attempted murder.

At trial, the prosecutor sought to introduce the conviction statement and the indictment to prove the specification. The respondent moved for a bifurcated trial in order to prevent the jury from receiving this evidence until after guilt had been established. He argued that since the prior indictment alleged an attack on a woman with a knife, it would be especially prejudicial in this case, because he was again charged with assaulting a female with a knife. The trial judge agreed that it would be wrong to consider the evidence regarding the earlier conviction for the purpose of establishing the current offense, and he so instructed the jury.[7] Nevertheless, he refused to bifurcate the proceeding.

---

[7] The judge's instructions stated, in part:

"Now, the evidence presented to you concerning a prior conviction of this Defendant, Robert Lonberger, for the offense of attempted murder in Illi-

Respondent then offered to stipulate that the Illinois conviction was for attempted murder, arguing that this would at least eliminate any need to introduce the Illinois indictment. Both the prosecutor and the trial judge rejected that offer. Instead, the jury was given a copy of the Illinois indictment reciting the details of the Illinois charge as well as the Illinois conviction statement. The jury found respondent guilty of aggravated murder and found the specification to have been proved beyond a reasonable doubt; the trial judge sentenced him to death.

The Ohio Court of Appeals reversed the aggravated murder conviction on the ground that the State had failed to prove rape, or even intercourse with the respondent, beyond a reasonable doubt. However, the court rejected the argument that the jury's finding that the respondent was guilty of murder had been unfairly contaminated by its receipt of the Illinois indictment. On remand, the trial court imposed a sentence of 15 years to life.

In retrospect, it is quite obvious that the highly prejudicial Illinois indictment should *never* have been admitted into evidence for any purpose at all. The indictment was relevant only to the specification, the specification was relevant only if the murder was aggravated, and the State failed to produce enough evidence of aggravation even to justify sending the charge to the jury.

Even if there had been enough evidence of aggravation to reach the jury, there was no legitimate reason for the State to give the Illinois indictment to the jury until *after* it had found an aggravated murder beyond a reasonable doubt. Sixteen years ago, the *Spencer* Court upheld such a procedure by stressing that state procedures varied widely and

---

nois in 1968 is not introduced for the purpose of proving that the Defendant committed the offenses, or either of them, for which he is being tried this week . . . you may not consider it for the purpose of proving, in any way, that the Defendant committed the offenses for which he is being tried today." Tr. 1178–1180.

that experimentation was still in progress.  385 U. S., at 566. Those facts are not true today.  Bifurcated proceedings are now the rule in capital cases throughout the Nation.[8]  It is

---

[8] Ohio's laws are unique in this country.

The District of Columbia and 13 States (Alaska, Hawaii, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, North Dakota, Oregon, Rhode Island, West Virginia, and Wisconsin) have no capital punishment statutes at all.

Three States have capital punishment statutes limited to certain precise categories of "aggravated" murder, where the existence of prior convictions is not an aggravating circumstance.  N. Y. Penal Law § 125.27(1) (a)(iii) (McKinney 1975) (see People v. Davis, 43 N. Y. 2d 17, and n. 3, 371 N. E. 2d 456, and n. 3 (1977), cert. denied, 435 U. S. 998 and 438 U. S. 914 (1978)); Vt. Stat. Ann., Tit. 13, § 2303(c) (Supp. 1982); Wash. Rev. Code § 10.95.020 (1981).  It is significant that under the "habitual criminal" statutes in all three States, where prior convictions are in effect "aggravating circumstances," bifurcated proceedings are used.  See N. Y. Crim. Proc. Law §§ 400.20, 400.21 (McKinney Supp. 1982); State v. Angelucci, 137 Vt. 272, 405 A. 2d 33 (1979); State v. Gear, 30 Wash. App. 307, 633 P. 2d 930 (1981).

Thirty-three States have capital punishment statutes with bifurcated proceedings so that evidence of aggravating circumstances is not introduced until after the jury has determined guilt or innocence.  Ala. Code § 13A–5–45 (Supp. 1982); Ariz. Rev. Stat. Ann. § 13–703B (Supp. 1982); Ark. Stat. Ann. § 41–1301 (1977); Cal. Penal Code Ann. § 190.1 (West Supp. 1982); Colo. Rev. Stat. §§ 16–11–103, 18–1–105(4) (1978 and Supp. 1982); Conn. Gen. Stat. § 53a–46a (Supp. 1982); Del. Code Ann., Tit. 11, § 4209(b) (1979); Fla. Stat. § 921.141 (Supp. 1982); Ga. Code Ann. § 17–10–31 (1982); Idaho Code § 19–2515 (1979); Ill. Rev. Stat., ch. 38, ¶ 9–1(d) (1979); Ind. Code § 35–50–2–9(d) (1979); Ky. Rev. Stat. § 532.025 (Supp. 1982); La. Code Crim. Proc. Ann., Art. 905 (West Supp. 1982); Md. Ann. Code, Art. 27, § 413(a) (1982); Miss. Code Ann. § 99–19–101 (Supp. 1982); Mo. Rev. Stat. § 565.006 (Supp. 1982); Mont. Code Ann. § 46–18–301 (1981); Neb. Rev. Stat. § 29–2520 (1979); Nev. Rev. Stat. § 175.552 (1981); N. H. Rev. Stat. Ann. § 630:5 (Supp. 1981); N. J. Stat. Ann. § 2C:11–3.c (West 1982); 1982 N. J. Laws, ch. 111; N. M. Stat. Ann. § 31–18–14(A) (1981); N. C. Gen. Stat. § 15A–2000 (Supp. 1981); Okla. Stat., Tit. 21, § 701.10 (Supp. 1982); 42 Pa. Cons. Stat. § 9711 (Supp. 1982); S. C. Code § 16–3–20 (1982); S. D. Comp. Laws Ann. § 23A–27A–2 (1979); Tenn. Code Ann. § 39–2404 (Supp. 1981); Tex. Code Crim. Proc. Ann., Art. 37.071 (Vernon 1981); Utah Code Ann. § 76–3–207 (1978); Va. Code § 19.2–264.4 (Supp. 1982); Wyo. Stat. §§ 6–4–101, 6–4–102 (1977).

simply no longer tenable to say that the difficulties of administering a bifurcated trial are sufficient to justify a State's use of a prejudicial one-stage system. Indeed, the tactics employed in this case dramatically unmask the true prosecutorial interest in preserving a one-stage procedure—to enhance the likelihood that the jury will convict.[9] Because the only premises that even arguably support the holding in *Spencer* are no longer valid and plainly are not implicated in this case, I would not permit that decision to dictate the result in this case.

Even under the holding in *Spencer*, the Court should take note of the fact that the prejudice associated with a one-stage procedure increases whenever the written record of the earlier proceeding is not sufficient on its face to foreclose a challenge to the validity of the prior conviction. Such a challenge often requires a discussion of the details of a prior offense or of an unproved charge, thereby increasing the danger that the jury may draw the inference that has been universally recognized as impermissible throughout our history. See n. 1, *supra*. I would adopt a simple rule that a one-stage enhancement procedure is constitutionally intolerable whenever the documentary evidence of the prior conviction fails to establish its validity and its relevance beyond debate. Cf. *Spencer*, 385 U. S., at 562 ("The evidence itself is usually, and in recidivist cases almost always, of a documentary kind, and in the cases before us there is no claim that its presentation was in any way inflammatory"). The documentary evidence in this case plainly failed to satisfy that test.

---

Only Ohio considers prior convictions as aggravating circumstances without a fully bifurcated proceeding. Today, Ohio's system is half bifurcated: guilt and aggravating circumstances are considered together in one phase, mitigating circumstances in a second. Ohio Rev. Code Ann. § 2929.03 (1982).

[9] The stark contrast between the gratuitous use of prejudicial evidence over the defendant's objection in this case and the justification for the prosecutor's rebuttal when the defendant opened up the subject in *Michelson*, see n. 6, *supra*, highlights this conclusion.

Even if one believed that Ohio had a legitimate interest in refusing to bifurcate these proceedings, it insults our intelligence when it claims that it had a legitimate interest in sending the Illinois *indictment* to the jury. The State was allegedly trying to show, for sentence enhancement purposes, that respondent had been convicted of attempted murder in Illinois. The conviction statement showed that he had been convicted of "AGGRAVATED BATTERY, ETC." After failing in his efforts to get the proceeding bifurcated, the respondent offered to stipulate that the "ETC." referred to attempted murder. Yet the State refused to accept this stipulation. The prosecutor instead insisted on sending the indictment to the jury. The indictment was less probative of the specification than a stipulation would have been, since the conviction statement did not reflect a conviction for each of the four charges listed in the indictment, and the State has never suggested that it did. And the indictment was more prejudicial than a stipulation would have been, since it recited the details of the Illinois charge. The prosecutor's naked desire to inject prejudice into the record had the effect of complicating and prolonging the proceedings in this case [10]

---

[10] After the Ohio Court of Appeals remanded to the state trial court for resentencing in 1977, both the State and the respondent sought review in the Ohio Supreme Court, which was denied. After resentencing, the respondent sought federal habeas corpus relief in the United States District Court for the Northern District of Ohio. That court denied relief in an unpublished opinion and order. He appealed to the United States Court of Appeals for the Sixth Circuit, which reversed and ordered that the writ issue. *Lonberger* v. *Jago*, 635 F. 2d 1189 (1980). The State sought rehearing in the Court of Appeals, which was denied. This Court granted certiorari, 451 U. S. 902 (1981), vacating the judgment of the Sixth Circuit and remanding for further consideration in light of *Summer* v. *Mata*, 449 U. S. 539 (1981). The Sixth Circuit reinstated its prior judgment. *Lonberger* v. *Jago*, 651 F. 2d 447 (1981). The State again sought certiorari, which we again granted. 454 U. S. 1141 (1982). Today, almost six years after the Ohio Court of Appeals held that the issue of aggravated murder should never even have gone to the jury, litigation of this issue draws to a close.

and deprived the respondent of his constitutional right to a fair trial.

I would affirm the judgment of the Court of Appeals for the Sixth Circuit.