UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ROBERT JOHNSON,
          *Petitioner-Appellee,*

v.

FRED WATKINS, Superintendent of
Alexander Correctional Center;
THEODIS BECK, Secretary of North
Carolina Department of Correction,
          *Respondents-Appellants.*

No. 00-6515

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Graham C. Mullen, Chief District Judge.
(CA-96-146)

Argued: November 3, 2000

Decided: February 8, 2001

Before WILKINSON, Chief Judge, and WILKINS and
LUTTIG, Circuit Judges.

---

Reversed and dismissed by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** Clarence Joe DelForge, III, Assistant Attorney General,
NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North
Carolina, for Appellants. James Phillip Griffin, Jr., NORTH CARO-
LINA PRISONER LEGAL SERVICES, INC., Raleigh, North Caro-

lina, for Appellee. **ON BRIEF:** Michael F. Easley, Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellants.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

Robert Stanley Johnson, a former police officer, was convicted by a jury of two counts of first degree sexual offense and eight counts of indecent liberties with a minor. The state appellate courts affirmed Johnson's convictions[1] and Johnson timely filed a habeas corpus petition in federal district court pursuant to 28 U.S.C. § 2254. The district court granted partial summary judgment to Johnson on his habeas petition, holding that his conviction was obtained in violation of his right to effective assistance of counsel.[2] We reverse that part of the district court's decision granting Johnson's petition because we conclude that Johnson suffered no prejudice from his attorney's performance.

---

[1]The Gaston County Superior Court denied Johnson's motion for appropriate relief after conducting both an evidentiary hearing and a supplemental evidentiary hearing.

[2]Johnson also claimed that his due process rights under *Brady* v. *Maryland*, 373 U.S. 83 (1963), were violated by the state when it failed to turn over a report generated by the Department of Social Services. The district court denied this claim because both the defense counsel and Johnson were aware of the essential exculpatory facts contained therein and were able to make use of them. J.A. 240. Johnson does not appeal this decision and we do not consider his *Brady* claim.

## I.

Robert Stanley Johnson, a police sergeant with the city of Mount Holly, North Carolina, at the time he committed his offenses, was convicted after a jury trial and sentenced by the trial judge to twenty-four years and two life sentences, to run concurrently, for the sexual molestation of Heather, his five-year-old niece, and Amber, Heather's five-year-old friend.

The charges arose in late September of 1989, when Heather told her mother that Johnson showed Amber his penis, and that he had also shown his private parts to Heather. Further, Heather stated that Johnson had called her and Amber into his bedroom at different times, pulled down his pants, showed them his penis, and asked them to kiss it and "suck the white stuff out of it." The two girls often went to Johnson's house to play with Chad, Johnson's six-year-old son, and Johnson's schedule frequently allowed him to be at home during the daytime when the girls were there playing with Chad.

Heather's mother reported the sexual abuse to the Gaston County Police, after which Heather made a recorded statement to Detectives Cook and Seagle. In the statement, Heather related that, in addition to Amber, Chad was sometimes present when the sexual abuse occurred.

The detectives went immediately afterwards to Amber's school. At the school, Amber told Detective Seagle that "Bob" had touched her "private place" and that Heather and Chad had seen him do it. The detectives arranged to have Amber brought to the police station the next day to make a recorded statement. In that statement, Amber indicated that Johnson had told her to pull her pants down, exposed his penis to her, masturbated in front of her, and made them play a game in his basement which required the loser to pull down his or her pants. Amber also stated that Heather and Chad had been present when Johnson masturbated in front of her.[3]

---

[3]Amber and Heather attended different schools, and Johnson does not allege that the girls spoke to one another between the time Heather made her statement at the police station and the time Amber made her recorded statement the next day.

The Department of Social Services ("DSS") then initiated an investigation into the allegations involving Chad at the behest of the district attorney, who informed DSS that Johnson was being investigated for child molestation and that his son, Chad, was present while at least some of these activities were taking place. DSS assigned Ms. Billie Moss to investigate the allegations regarding Chad but did not conduct an investigation into the allegations of sexual abuse of Heather and Amber.[4]

Moss' summary report — a handwritten narrative record, much of which was prepared months after she interviewed Chad — recites that "Robert Johnson had been accused of sexual abuse of two females (not his) and possible abuse of Chad." J.A. 33. Moss first interviewed Chad at his school before Johnson was arrested. During that first interview, Moss did not mention Chad's father (Johnson), Heather, Amber, or any details of the allegations. Rather, Moss sought only to determine whether Chad understood which parts of his body were private and whether anyone had touched those areas. Chad indicated to Moss that he understood the private parts of his body and that he had never received any sexual touches from anyone.

Moss again interviewed Chad several days later, after Johnson was arrested, in the presence of his mother. During that interview Moss did mention Johnson; Chad denied that he had received or witnessed any sexual or improper touching by his father. Subsequently, Moss concluded in her summary report that the complaint "will be unsubstantiated as there was no evidence to support allegation that Chad had been sexually molested" or "present when other molestation occurred." J.A. 33-35.

Johnson was not criminally investigated, charged, or tried for sexual abuse of Chad but, rather, only for sexual abuse of Amber and Heather.[5] What is more, it is undisputed that Johnson knew that DSS classified the allegations regarding the sexual abuse of Chad as unsub-

---

[4]Although Moss was present when the police took Amber's recorded statement, she asked no questions of Amber and did not actively participate in the interview.

[5]Chad, Amber, and Heather all testified at trial and were subject to cross-examination.

stantiated,[6] as did his trial attorney. *See*, *e.g.*, J.A. 39, 42-44, 52. Still, after Johnson was convicted, and after Johnson exhausted his state court remedies on direct appeal, Johnson filed a Motion for Appropriate Relief ("MAR") in Gaston County Superior Court, seeking the DSS records concerning Chad and alleging that his trial counsel was ineffective because he failed to obtain them.[7] Petitioner subsequently filed an amended MAR, alleging ineffective assistance of trial counsel for failure to investigate and call Moss as a witness.

The state superior court reviewed the DSS files *in camera*, allowed the amended MAR, and conducted evidentiary and supplemental evidentiary hearings. Both Kellum Morris, who represented Johnson at trial, and Moss testified in the evidentiary hearings, as did Johnson and Chad.

Based on this testimony and the trial court record, the state court entered its order with written findings of fact and conclusions of law. The court held that Morris' failure to obtain the DSS records was professionally unreasonable, and that if Morris had obtained and considered the records, there was a reasonable probability that he would have offered portions of the records into evidence and called Moss as a witness. However, the state court denied Johnson's MAR, holding that he was not prejudiced by his attorney's failure to introduce either the DSS report or Moss' testimony at trial.

The North Carolina Court of Appeals denied Johnson's petition for a writ of certiorari, and Johnson timely filed his federal habeas petition under 28 U.S.C. § 2254 on April 18, 1996. The district court granted the writ in March of 2000 — without an evidentiary hearing — based on its determination that Moss' testimony at the post-trial supplementary evidentiary hearing was "grossly inconsistent with her findings some five years earlier and with her testimony at the [initial]

---

[6]A DSS finding of "unsubstantiated" means the agency found little or no evidence to support an allegation.

[7]The "DSS Report" consists of an intake sheet, Moss' handwritten narrative record, miscellaneous departmental notations and records, a list of references provided to the agency by Johnson or his wife, and notes of telephone conversations between Moss and persons she called on behalf of Johnson.

evidentiary hearing." The court concluded that it was "unable to say" that admission of some portion of the DSS report or Moss' testimony "would not have changed the result." J.A. 242.

Respondent-Appellees Fred Watkins, Superintendent of Alexander Correctional Center, and Theodis Beck, Secretary of North Carolina Department of Correction, appeal the district court's order.[8]

## II.

Johnson's claim that he received constitutionally ineffective assistance of counsel is governed by standards well-settled since *Strickland* v. *Washington*, 466 U.S. 668 (1984). To state a valid claim of ineffective assistance of counsel, Johnson must show both that his attorney's performance fell below an objective standard of reasonableness and that he suffered actual prejudice as a result. *Id.* at 687.

In evaluating whether Johnson has shown actual prejudice from deficient performance, it is insufficient "to show that the errors had *some* conceivable effect on the outcome of the proceeding." *Id.* at 693 (emphasis added). To satisfy the prejudice prong, Johnson must prove that there is a "reasonable probability" that the result of the trial would have been different absent the deficient performance — "a probability sufficient to undermine confidence in the outcome," rather than a possibility the outcome would have been different. *Id.* at 694. Importantly, attorney errors are considered in context; when making the prejudice determination, the "court may consider all aspects of the evidence proffered by the petitioner, including aspects both beneficial and detrimental to petitioner's case." *Huffington* v. *Nuth*, 140 F.3d 572, 581 (4th Cir. 1998).[9]

---

[8]Franklin Freeman was originally the Secretary of the Department of Correction when Johnson filed his habeas action. Pursuant to Fed. R. Civ. P. 25(d)(1), Mr. Beck is automatically substituted as a party.

[9]Because Johnson filed his petition for federal habeas relief prior to enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1214, the mixed question of law and fact as to whether Johnson received effective assistance of counsel is reviewed de novo. *Hoots* v. *Allsbrook*, 785 F.2d 1214, 1219 (4th Cir.

### III.

Examined in light of *Strickland*, subject to the pre-AEDPA standard of review, and affording the section 2254 presumption of correctness to the state court's findings of fact, we conclude that the facts in this case do not warrant habeas relief because, as the state courts decided, Johnson has failed to establish prejudice from either counsel's failure to obtain the DSS report or Moss' failure to testify. Because we conclude that Johnson has failed to show any prejudice from his counsel's alleged ineffective assistance, we need not reach the issue of whether counsel's performance was in fact objectively unreasonable, when counsel already knew that the DSS had classified as "unsubstantiated" the allegations against Johnson with respect to Chad[10] and in fact did attempt to interview Moss before trial, but was rebuffed.[11]

### A.

Johnson's primary assertion is that he was prejudiced by his counsel's failure to call Moss as a witness at trial, because if the "jury had realized that [there was] another trained investigator who relied upon

---

1986). In conducting this de novo review, however, we are nonetheless bound by the underlying state findings of fact with respect to the DSS report and Moss unless a statutory exception overcomes the presumption of correctness. *See* 28 U.S.C. § 2254(d) (pre-AEDPA); *Strickland*, 466 U.S. at 698.

[10]*See*, *e.g.*, *Strickland*, 466 U.S. at 691 (when facts are generally known to counsel, "the need for further investigation may be considerably diminished or eliminated altogether"); *Huffington*, 140 F.3d. at 580 (suggesting that failure to interview witnesses where the substance of their testimony is known may not violate the Sixth Amendment).

[11]Petitioner's statement that trial counsel was "professionally deficient in failing to interview Billie Moss" is disingenuous at best. Petitioner's Brief at 19. Trial counsel and his assistant did attempt to discuss Moss' expected trial testimony with her (they expected the state was calling her as a witness because the state subpoenaed her), Rec. on App., Vol. I C-5, and Moss testified at the evidentiary hearing that she told them both that she could not discuss the matter because of confidentiality. J.A. 111.

her investigation to conclude that Chad was in no danger of being abused by Petitioner, there is a reasonable probability that it would have found reasonable doubt that the two girls were telling the truth." Petitioner's Brief at 24. Johnson's claim of prejudice assumes that if Moss had testified, "the jury would have known that prior to the possibility of any [ ] motive to conceal the truth, Chad had convinced a trained investigator that Petitioner was innocent of the accusations against him." Petitioner's Brief at 27-28.

1.

The flaw in this argument is that it focuses exclusively on the evidence that Johnson presumably would have chosen to elicit and ignores the further testimony that also would have been elicited from Moss, such as that that she presented during the state court proceedings. Considering all of the evidence that likely would have been elicited from Moss, together with the factual findings of the state court — many dependent upon Moss' testimony — which supported that court's holding that Johnson was not prejudiced by his lawyer's performance, we are unpersuaded that the jury would have reached a different result had it heard testimony from Moss that she classified the allegations regarding sexual abuse of Chad as unsubstantiated. *Huffington*, 140 F.3d at 581 (explaining that all proffered evidence must be considered in making the prejudice inquiry). Contrary to Johnson's claim, the evidence elicited from Moss, we are convinced, would not show that Moss doubted the truth of the little girls' allegations but, rather, would show that she did not even consider these allegations in arriving at her opinion with respect to Chad. For, as the state court found, Moss' investigation, and her conclusion that the allegations regarding the abuse of Chad were unsubstantiated, were based almost exclusively on information gleaned from Johnson, his wife, and their six-year-old son. Specifically, the state court found that: (1) Moss did not seek to interview Amber or Heather as part of her investigation, J.A. 221; (2) Moss did not consider what Amber had said at an October 13 interview by the police, in finding that the allegations regarding Chad were unsubstantiated, J.A. 221; and (3) Moss also did not consider the reports of detectives investigating the offenses against Heather and Amber in finding that the allegations regarding Chad were unsubstantiated. J.A. 221.

Even more significantly, the state court also found that Moss would have testified at trial that, in her October 13 statement to the police, Amber described explicit sexual conduct that was age-inappropriate and possibly suggestive of sexual abuse, and that Moss "found Amber's statement about what happened to her to be credible." *Id.* This and similar testimony, when elicited at trial, would have served to directly implicate Johnson in the charged offenses.

Given that Moss had not considered Amber's and Heather's statements to the police in reaching her conclusions,[12] there is every reason to believe that she would have testified at trial that her conclusion would not have been that the allegations of child abuse were unsubstantiated if she had been aware of the statements of the two girls. Indeed, and as the state court emphasized in reaching its conclusion, Moss testified at the evidentiary hearings that Amber's October 13 statement — in which Amber revealed that Chad had been present when the petitioner exposed himself and masturbated in front of her (J.A. 219) — was inconsistent with the DSS finding that the allegations of abuse of Chad were unsubstantiated. J.A. 221.

In particular, Moss indicated that if she had been aware of that information, "probably our case decision would have been that Chad was sexually abused," J.A. 137, or that her "conclusion probably would not have been that Chad was sexually abused, but that he was present while sexual acts were being performed and he was therefore a neglected child and in an environment injurious to his welfare." J.A. 166. From this, we conclude that Moss' testimony at trial would have confirmed that she found Amber and Heather credible rather than, as Johnson contends, that she found Chad credible. Accordingly, we reject Johnson's claim that if Moss had testified, the jury would have concluded *either* that she believed Chad *or* that she was convinced that Johnson was innocent of the accusations against him.

For many of the same reasons, and in light of the testimony discussed above, we also reject Johnson's claim that a reasonable probability exists that Moss' testimony that Chad exhibited no

---

[12]Trial counsel's uncontradicted testimony at the evidentiary hearing was that Moss never communicated with either girl and that the DSS initiated no investigation with respect to them. J.A. 49.

characteristics of abuse would have had the impact on the jury's verdict that he believes. Indeed, considered in context, even if Moss testified that Chad exhibited no characteristics of sexual abuse, such testimony would have had minimal probative value, given that she also testified that "there is no definite characteristic for sexual abuse. You can't look at a child and just based on what their behaviors are determine why — whether or not they have been sexually abused." J.A. 114. In other words, "when you're looking at indicators for sexual abuse, some children present and some don't present." J.A. 177.

Given the full testimony that Moss could have been expected to give, we simply cannot conclude that there is a reasonable probability that the jury would have found doubt as to whether Johnson was guilty of the offenses against Amber and Heather had Moss testified that Chad did not display characteristics of abuse.

2.

In holding to the contrary, the district court wholly discounted the factual findings of, and bases for, the state court's decision. Indeed, the district court appears to have granted the writ based solely on its own conclusion — without even the benefit of an evidentiary hearing — that Moss' testimony at the supplemental evidentiary hearing was,

> grossly inconsistent with her findings some five years earlier and with her testimony at the [initial] evidentiary hearing. Nevertheless, much of the state judge's ruling is based on the contradictory testimony of Moss at the supplemental hearing.

J.A. at 241. But in so holding, the district court erroneously ignored the requirements of both *Sumner* v. *Mata*, 449 U.S. 539, 551 (1981) (noting that federal court should include in its opinion the reasoning which led it to conclude that the state finding was "not fairly supported by the record"), and *Marshall* v. *Lonberger*, 459 U.S. 422, 434 (1984) (admonishing that habeas court may not redetermine witness credibility).

As federal courts, we are not free to disregard the factual findings

of the state court or to simply discount Moss' testimony as inconsistent or incredible — even pre-AEDPA. There is no evidence, or even allegation, that the state court failed to afford Johnson a full, fair, and adequate evidentiary hearing on the matters raised in his MAR and amended MAR. Nor is there reason to conclude that the state court's findings of fact were not fairly supported.[13] *See* 28 U.S.C. § 2254(d) (noting exceptions to the presumption of correctness afforded to state court factual findings); *Miller* v. *Fenton*, 474 U.S. 104, 114 (1985) (compelling reasons for according trial judge's determinations regarding witness credibility presumptive weight); *Lonberger*, 459 U.S. at 433 (even implied credibility determination tantamount to a fact and subject to "fairly supported by the record" standard).

Applying the section 2254(d) presumption *requires* that we accept the state court's findings of fact, including the finding implied in the incorporation of her testimony into its own findings, that Moss' testimony at the supplementary evidentiary hearing was credible. Further, the presumption of "deference requires that a federal habeas court more than simply disagree with the state court before rejecting its factual determination. Instead, it must conclude that the state court's findings lacked even "'fair[ ] support' in the record." *Lonberger*, 459 U.S. at 432 (citing 28 U.S.C. § 2254(d)(8)). We can say neither that the district court considered the proper standard of review nor that the state court findings are unsupported by the record.

As the Supreme Court has made clear, "28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state [ ] court, but not by them." *Id*. at 434. Accepting Moss' testimony at the evidentiary hearings, as did the state courts, we conclude that Moss would not have testified as Johnson claims. Rather, the record makes clear that if she had testified at trial, she would have rejected her own DSS report and prior opinion that the allegations regarding Chad were

---

[13]Even prior to the AEDPA, section 2254(d) established a presumption of correctness — absent exceptions not present here — for "a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction . . . evidenced by a written finding, written opinion, or other reliable and adequate written indicia. . . ."

unsubstantiated. It cannot reasonably be claimed that the absence of such damning testimony from Moss prejudiced Johnson.

3.

Our holding that Johnson was not prejudiced by his attorney's performance does not depend solely upon the fact that Moss would have rejected the DSS classification and her prior opinion, had she testified at trial. We are satisfied that the jury would not have come to a different conclusion had Moss testified also because the allegedly relevant exculpatory facts that would have been elicited from Moss *were* presented to the jury at trial, albeit through other witnesses. Additionally, we believe that any slight probative value from her testimony would have been outweighed by the damage to Chad's credibility from her testimony on either direct or cross-examination.[14]

In the first place, even to the extent that Moss' testimony would have served to corroborate that Chad made statements denying that Johnson sexually abused him or anyone else, we cannot say that her testimony would have had the effect that Johnson imagines, given that it would be cumulative of evidence that *was* presented to the jury. *See*, *e.g.*, *Huffington*, 140 F.3d at 581 (*citing Hunt* v. *Nuth*, 57 F.3d 1327, 1333 (4th Cir. 1995) (essentially cumulative evidence not compelling; counsel's failure to obtain cumulative evidence does not demonstrate prejudice). Chad testified at trial and relayed the relevant information from his conversations with Moss to the jury. For instance, in addition to learning that Chad denied any sexual assault or abuse by Johnson in his interviews with Moss, the jury also learned that nothing came of the DSS investigation: Chad explained on direct examination that he had limited interviews with Moss, after which he never saw her again. Moreover, this testimony was uncontroverted; the state produced no evidence suggesting that the DSS investigation continued.

Second, though Johnson believes that Moss' testimony that Chad denied the sexual abuse prior to Johnson's arrest is significant, John-

---

[14]We note as well the relatively weak probative value of evidence that is not directly material to the charged offenses; Moss was not a material witness, or even a rebuttal witness.

son again falls far short of showing prejudice.[15] If Moss had testified, she would have told the jury that neither Johnson, Amber, Heather, nor the specific allegations were mentioned in the interview that took place with Chad prior to Johnson's arrest, minimizing further the significance of the pre-arrest interview.

Moreover, the jury *did* learn that Chad was interviewed by Moss prior to Johnson's arrest, because trial counsel specifically elicited from Chad that Moss' first interview took place *before* Johnson was arrested:

> Q: Now [Ms. Moss' asking you questions] was before your father was even arrested, wasn't it?
>
> A: Yes.
>
> Q: She came to your school before you ever heard anything about your father going to the police department and to the jail. Isn't that right?
>
> A: Yes.

State Trial Tr. at 248. The state did not rebut this testimony.

The jury also learned, through cross-examination and closing arguments, many of the other facts which, if testified to by Moss, Johnson claims may have resulted in a different outcome. For example, the jury learned through defense counsel's cross-examination of state witnesses that, with regard to Chad, the detectives involved in the case did not see a need to go beyond Moss' investigation; that Chad was never removed from the home he shared with Johnson and his mother; and that Moss was not testifying at the trial. State Trial Tr. at 165, 208-210. Once again, these factual matters were not disputed by the state and remained uncontroverted.

---

[15]Though our decision does not rely on this point, we remain skeptical that a child would not have the same motivation to lie to law enforcement about his or her sexual abuse at the hands of a parent in order to protect the parent, even absent knowledge of an arrest.

The brevity of Moss' investigation — and the reasonable inference that it went nowhere because the allegations with respect to Chad were unfounded — was further underscored by Johnson's trial counsel in closing argument, which capitalized upon Moss' absence from trial. In addition to suggesting that the state was hiding something from the jury by not calling Moss as a witness, trial counsel argued that Moss *must* have believed Chad or she "would have investigated beyond the visit with the parents in her office," strongly suggesting, again, that the reason the state did not have her at the trial was because Chad told her that the allegations were not true. *See* J.A. at 55-57.

Trial counsel's use of the absence of Moss to highlight the theory and buttress the claim that Chad — rather than Amber or Heather — was telling the truth is instructive; it informs the jury of facts helpful to the defense while avoiding the negative aspects of Moss' testimony.

As one example, Moss testified at both the post-trial evidentiary hearing and the supplementary evidentiary hearing that she had some concerns during the pendency of the investigation that Chad and Johnson were very close, and that Chad would say anything to protect his dad, J.A. 183, or may have felt "compelled to protect his father," J.A. 104. Any of these statements would have undermined Chad's credibility.

Further, Johnson's claims regarding the importance of Chad's testimony and the need to corroborate it through Moss' trial testimony depend in large part on the assumption that Chad's statements to Moss were wholly truthful and that she accepted them as such. As discussed above, Moss would not have testified to that effect at trial but, even if she would have, Chad's trial testimony was inconsistent with his earlier statements to Moss. Chad avoided impeachment by prior inconsistent statement precisely because Moss did not testify.

For instance, while Chad told Moss that he had never received a sexual touch, Chad testified at trial that the five-year-old Heather "has always been wanting me to get on top of her and to French kiss her and try to pull my pants down and for her to pull her pants down," and that "she has done all that more than once." State Trial Tr. at 165.

This testimony was inconsistent with his statements to Moss that he had not received a sexual touch.

So, too, with Chad's trial testimony that Heather and Amber tried to play a game with a clock that involved pulling one's pants down, that both girls wanted to take their pants down, and that he told Moss about this game. State Trial Tr. at 256, 260-61. In fact, contrary to his own trial testimony, Chad had told Moss that a game was played with the clock that did *not* involve pulling one's pants down and also denied *any* acting out involving the clock.

Given the importance of showing that Chad was totally truthful with Moss, even these inconsistencies would have undermined the value of Chad's testimony. As a result, the fact that any probative value from Moss' testimony would have been outweighed by concomitant damage to Chad's credibility provides further support for our holding that Johnson has failed to meet the prejudice prong of *Strickland* with respect to the absence of this testimony from his trial.

## B.

We dispense in short order with Johnson's related habeas claim for ineffective assistance of counsel based on trial counsel's failure to obtain the DSS report. First, in his brief to this court Johnson neglects either to address counsel's failure to obtain the DSS report or to argue specifically that this constitutes ineffective assistance of counsel — as he is required to do. *See* Fed. R. App. P. 28(b) (appellee's briefs must conform to the requirements of paragraphs 28(a)(1)-(6); (a)(6) mandates that a party's brief contain its arguments). *See also Edwards* v. *City of Goldsboro*, 178 F.3d 231, 241 n.6 (4th Cir. 1999) (noting that issues not briefed or argued on appeal are deemed abandoned, citing rule 28(a)(6)). Instead, as Johnson's "summary of argument" makes clear, his argument — and the issue briefed — is that trial counsel was ineffective in failing to interview Moss and in failing to call her to testify in Johnson's defense at trial. It appears, therefore, that Johnson has effectively abandoned the claim that he received constitutionally ineffective assistance of counsel because his trial counsel did not obtain the DSS report.

But even if Johnson had not abandoned this claim, and even if we were to conclude both that, upon obtaining the DSS report, trial coun-

sel would have chosen to admit portions of it and that those portions would have been admissible, we would nonetheless hold that Johnson was not prejudiced by counsel's failure to obtain it. For, considering admission of the DSS report at trial in toto, including aspects both beneficial and detrimental to Johnson's case, we conclude that it would have had minimal probative value and certain harmful effects, such that there is no reasonable probability that it would have introduced reasonable doubt as to Johnson's guilt.

Significantly, we believe that if Johnson had attempted to introduce any portion of the DSS report, the state would have called Moss as a witness. As discussed *supra* at 8-9, this testimony would not only have rendered nugatory the DSS finding with respect to Chad, but also would have presented the serious risk that, once she looked at all relevant information, rather than relying on Johnson and his family only, Moss' testimony would have tended to confirm that she found Amber and Heather to be credible.

Similarly, for the same reasons discussed *supra* at 14-15, we conclude that the information contained in the DSS report tends to contradict parts of Chad's trial testimony. Therefore, any probative value to be gained from the DSS report is outweighed by the risk that its admission would undermine Chad's credibility and utility as a witness.

Finally, and for obvious reasons, the DSS report offers little probative value with regard to its *substantive* merits; it is cumulative evidence, on non-material facts, which the jury *was* made aware of at trial, yet ultimately rejected. *See* discussion, *supra* at 12. This point is all the more compelling when it is considered that the DSS report was neither directed at nor intended to resolve the charges at trial — Johnson's sexual abuse of the two little girls.

### *CONCLUSION*

Even assuming trial counsel's performance was objectively unreasonable, a matter we do not decide, Johnson failed to show that either Moss' testimony or introduction of the DSS report was reasonably likely to change the outcome of the trial. Consequently, Johnson was not sufficiently prejudiced by his attorney's performance to constitute

constitutionally ineffective assistance of counsel. The judgment of the district court, accordingly, is reversed and the petition is dismissed.

*REVERSED AND DISMISSED*