Dana J. LINGER, Petitioner–Appellant,

v.

Rukhsana AKRAM, Warden, Respondent–Appellee.

No. 98–3506.

United States Court of Appeals, Sixth Circuit.

Sept. 19, 2001.

Before KRUPANSKY, SUHRHEINRICH, and SILER, Circuit Judges.

PER CURIAM.

The petitioner-appellant, Dana Joann Linger ("Linger" or "the petitioner"), a Caucasian female state prisoner convicted, under Ohio law, of aggravated vehicular homicide committed while highly intoxicated, has challenged the district court's March 27, 1998 denial of her April 21, 1997 application, under 28 U.S.C. § 2254,[1] for a writ of habeas corpus. On review before the instant forum, Linger has contended that the lower federal court erroneously rejected her claims that the Ohio Adult Parole Authority ("OAPA") had deprived her of constitutionally guaranteed equal protection and due process rights (*see* U.S. Const. amend. XIV, § 1), by denying her applications for release from prison on parole, allegedly by reason of her race or some other arbitrary and capricious motive, and/or by the illicit retroactive application of ex post facto legislation (*see* U.S. Const. Art. I, § 10).

On November 24, 1991, the petitioner, while intoxicated, caused a serious automobile collision which killed one person and permanently injured four additional victims. On February 5, 1992, an Ohio grand jury charged Linger with one count of aggravated vehicular homicide and four counts of aggravated vehicular assault.

On December 10, 1992, Linger pleaded guilty to the first count (aggravated vehicular homicide), a third degree felony under former Ohio Rev.Code § 2903.06(A) & (B) ("For Offenses Committed PRIOR TO July 1, 1996"), in exchange for the state's dismissal of the indictment's four remaining charges. On January 22, 1993, an Ohio Common Pleas Court sentenced Linger to an indefinite period of incarceration of five to ten years,[2] to be followed by a three-year suspension of driving privileges, and assessed a $5,000 fine. The petitioner neglected to directly appeal that judgment.

Between approximately December 1995 and April 1997, Linger had unsuccessfully applied to the OAPA for release from imprisonment on parole, and had also instituted in the Ohio courts a series of fruitless requests for judicially ordered release from the state penal system. In support of those petitions, Linger had contended, among other things, that her continued punitive confinement offended constitutional due process and equal protection norms, and was arbitrary and capricious, because her self-acclaimed status as a "model prisoner" purportedly entitled her to immediate release. Additionally, following the OAPA's June 1996 denial of her initial request for parole, and the Ohio General Assembly's enactment of Amended Senate Bill 2 ("Am.S.B.2") effective July 1, 1996,[3] Linger argued that her subsequent continual detention in the state penitentiary re-

---

1. Section 2254(a) stipulates that a federal court "shall entertain an application for a writ of habeas corpus in [sic] behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." *See Lindh v. Murphy,* 521 U.S. 320, 323–37, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997) (instructing that all federal habeas petitions launched after April 24, 1996 are subject to the statutory amendments promulgated by Congress via the Antiterrorism and Effective Death Penalty Act of 1996 ("the AEDPA")).

2. *See* former Ohio Rev.Code § 2929.11(B)(3)(a) ("For Offenses Committed PRIOR TO July 1, 1996") (positing that, for third degree aggravated felony offenders, in the absence of specified special circumstances, the "the minimum term, which may be imposed as a term of actual incarceration, shall be two, three, four, or five years, and the maximum term shall be ten years").

3. Am. S.B. 2, popularly known in Ohio as the "Truth in Sentencing Law," *inter alia* eliminated indefinite imprisonment sentences: "For a felony of the third degree, the prison

sulted from the impermissible ex post facto application of that new law to her. However, the record below did not reflect that any of her complaints in state court had articulated any race discrimination claim. Moreover, to date, the petitioner has not appealed *any* of her claims before the Ohio Supreme Court.

■ On April 21, 1997, the petitioner instigated her subject § 2254 collateral review before the district court. Among other arguments and contentions not material to the appeal currently at bench, Linger speculated that the OAPA, in denying her parole applications, had adversely discriminated against her because of her Caucasian race; had arbitrarily and capriciously failed to "equalize" her actual imprisonment duration *vis-a-vis* the sentences of persons convicted of similar offenses after July 1, 1996; and had retroactively applied to her the "spirit" of Am. S.B. 2's prospective elimination of "good time" credits.[4]

■ On March 27, 1998, the district judge overruled each of Linger's multiple charges of constitutional violations which allegedly germinated from her ongoing incarceration by the state of Ohio. Regarding the three contentions which Linger has framed on appeal, the district court resolved that (1) no equal protection infraction arose from the petitioner's allegedly "unequal" imprisonment sentence, when compared to the more lenient penalties sustained by individuals sentenced under the July 1, 1996 statute, because the new law's non-retroactivity to persons sentenced prior to July 1, 1996 was rationally related to a legitimate state interest, namely "judicial economy" (*citing, inter alia, City of Cleburne, Texas v. Cleburne Living Center, Inc.*, 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)); (2) no evidence proved that the OAPA's denials of Linger's parole applications were motivated by any retroactive application of the "spirit" of Am. S.B. 2's elimination of "good time" credits against a prisoner's minimum incarceration sentence; and (3) the unauthenticated statistics proffered by

---

term shall be one, two, three, four, or five years." Ohio Rev.Code § 2929.14(A)(3) ("For Offenses Committed ON OR AFTER July 1, 1996"). Additionally, Am. S.B. 2 eliminated "good time" credits against an inmate's minimum prison sentence which he or she must discharge prior to attaining eligibility for parole consideration. *Compare* former Ohio Rev.Code § 2967.193 ("For Offenses Committed PRIOR TO July 1, 1996") *with* the current version of § 2967.193 ("For Offenses Committed ON OR AFTER July 1, 1996"). The Ohio legislature specified that Am. S.B. 2 would *not apply retroactively* to convicts, such as Linger, who were sentenced prior to July 1, 1996. *See* Am. S.B. 2 ("The provisions of the Revised Code in existence prior to July 1, 1996, shall apply to a person upon whom a court imposed a term of imprisonment prior to that date[.]") (*quoted in State ex rel. Lemmon v. Ohio Adult Parole Authority*, 78 Ohio St.3d 186, 677 N.E.2d 347, 349 (Ohio 1997) (per curiam)).

The district court record did not include Linger's parole board records. Nonetheless,

during the appellate argument, the respondent warden's counsel represented, without opposition from the petitioner's lawyer, that OAPA records reflected that its members determined, in June 1996 (prior to the July 1, 1996 effective date of Am. S.B. 2), that Linger would serve the maximum ten year duration within the Ohio correctional system, because of the seriousness of her crime of conviction, the devastating consequences of her actions upon her victims, and the significant risk that she might become a recidivist offender if released.

4. Before the district court, the petitioner had mounted additional attacks against her continued incarceration, which that court also rejected. Linger has abandoned those claims by failing to assert them on appeal. *See, e.g., Grider v. Abramson*, 180 F.3d 739, 750 n. 14 (6th Cir.) (explaining that arguments not adequately developed in the appellant's opening brief should be deemed waived), *cert. denied*, 528 U.S. 1020, 120 S.Ct. 528, 145 L.Ed.2d 409 (1999).

Linger as alleged proof that African–American prisoners in Ohio tended to receive comparatively favorable treatment from the OAPA vis a vis inmates of other races, even if assumed *arguendo* to be accurate, nonetheless did not prove what Linger claimed that they proved.[5]

■ A federal appellate court reviews section 2254 inmate petitions *de novo;* although district court findings of fact are generally reviewed for clear error. *Moore v. Carlton,* 74 F.3d 689, 690–91 (6th Cir. 1996). An appellate court on habeas review decides federal law questions *de novo. Marshall v. Lonberger,* 459 U.S. 422, 431, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983). "[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady,* 456 U.S. 152, 166, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). A federal habeas court does not sit as a traditional appellate review with supervisory power to correct general errors committed by a state authority; rather, it has power only to accord relief for *constitutional violations. Donnelly v. DeChristoforo,* 416 U.S. 637, 642, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). Furthermore, a section 2254

habeas petitioner must prove that a state authority's deprivation of a federal constitutional right had caused her "actual prejudice." *Brecht v.. Abrahamson,* 507 U.S. 619, 637–38, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993).

■ Ordinarily, a § 2254 habeas applicant must exhaust all potential avenues of relief available under state law prior to prosecuting a federal action for collateral review. *Castille v. Peoples,* 489 U.S. 346, 349, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989). The "exhaustion" requirement is discharged only after the petitioner has fully litigated his or her claim(s) within the state judicial system to a final dispositive adverse decree issued by the state's Supreme Court. *Silverburg v. Evitts,* 993 F.2d 124, 126 (6th Cir.1993). A federal court may excuse a petitioner's neglect to discharge the "exhaustion" prerequisite if the claimant proves that no adequate state corrective process is available, or that, under the material circumstances, the available state process are ineffective to protect his or her rights. *See* 28 U.S.C. § 2254(b)(1)(B). In the action *sub judice,* Linger has not proved the existence of either statutory exception.[6]

**5.** The plaintiff failed to carry her burden of proving a pattern or practice of discrimination against non-black prisoners by the OAPA because she did not proffer statistical or other evidence which was sufficient to prove an unexplained race-defined disparity in parole decisions over a relevant substantial time period. *See, e.g., McCleskey v. Kemp,* 481 U.S. 279, 294–95 & n. 15, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987). Moreover, Linger failed to evidence that any black convict who had been granted parole was similarly situated to her in all respects material to the parole assessment. *See, e.g., Mitchell v. Toledo Hospital,* 964 F.2d 577, 582–83 (6th Cir.1992). In fact, a media piece introduced by Linger directly belied her averment that the OAPA had denied her parole requests because of her race. *See* Mark Tatge, "Prisoners Not Doing the Same Time for the Same Crime," *The Plain Dealer,* August 17, 1997, page 1–A (re-

porting that the OAPA had become tougher with certain classes of offenders in recent years, including especially individuals who had been convicted of vehicular homicide committed while driving under the influence of alcohol).

**6.** Furthermore, claims which a habeas petitioner has failed to fully litigate on their merits through the state court system, and are currently *time barred* under state law, have been "procedurally defaulted" by the claimant and are thus forfeited. *Caldwell v. Russell,* 181 F.3d 731, 739 & n. 8 (6th Cir.1999). Those issues normally are non-cognizable on federal habeas review, unless the petitioner can prove a justifiable cause for his or her procedural default, and that he or she will sustain substantial actual prejudice if the federal court does not set aside the default bar. *Teague v. Lane,* 489 U.S. 288, 298–99, 109

■ Although the district court acknowledged that the respondent warden had opposed Linger's habeas petition by advocating that none of her claims were presently cognizable before a habeas bench because none had been exhausted in the Ohio courts, the lower court instead elected, "in the interests of judicial economy," to reject Linger's contentions on their substantive merits. Because the "exhaustion" requirement is not jurisdictional, and the principles of comity and federalism which undergird that prerequisite are not offended by a federal court's refusal to grant habeas relief against a state by *rejecting* an unexhausted claim on its merits, federal judges possess the discretionary authority to *deny* unexhausted habeas claims on their merits to avert the purposeless future litigation, in the state courts, of substantively ill-conceived contentions. 28 U.S.C. § 2254(b)(2); *Granberry v. Greer,* 481 U.S. 129, 135, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987); *O'Guinn v. Dutton,* 88 F.3d 1409, 1412 (6th Cir.1996) (en banc) (per curiam); *Rockwell v. Yukins,* 217 F.3d 421, 423 (6th Cir.2000). Hence, this reviewing court concludes that no error of law or abuse of discretion tainted the federal trial court's decision to adversely dispose of Linger's habeas arguments on their merits.

The instant appellate court has carefully and thoroughly studied the lower court's decision, all briefs and arguments of counsel, the record below, and the controlling legal authorities, and concludes that the trial court's denial, on the merits, of Linger's habeas corpus petition was correct for the reasons expounded by the district judge, and that the appellant's assignments of error on appeal were each misconceived.[7] Accordingly, this court adopts the opinion of the district court entered March 27, 1998.

Thus, the district court's rejection of Linger's § 2254 petition for a writ of habeas corpus is AFFIRMED.

S.Ct. 1060, 103 L.Ed.2d 334 (1989). An alternate showing by the petitioner that a "fundamental miscarriage of justice" will result if his or her procedural forfeiture of the subject challenge in the state courts is not avoided by the federal habeas court will also suffice. *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). In the action *sub judice,* the district court did not resolve the question whether, by reason of the petitioner's failure to litigate her claims before the Ohio Supreme Court, any of her arguments had been procedurally defaulted under Ohio law. However, no error of law or abuse of discretion infected the trial court's ultimate resolution of this case, for the reasons developed below.

7. The petitioner has misconstrued the Supreme Court's recent resolution in *Garner v.* *Jones,* 529 U.S. 244, 120 S.Ct. 1362, 146 L.Ed.2d 236 (2000), to purportedly compel a result contrary to that reached by the initial judge in the case *sub judice.* However, the *Garner* decision merely illuminated that a modification of state law, designed to apply retroactively, which increases the period between parole reviews, may violate the ex post facto clause, if that alteration in the law creates a significant risk of prolonging a defendant's incarceration. *Id.* at 250–52, 120 S.Ct. 1362. In the litigation *instanter,* Am. S.B. 2 created no risk that Linger will ultimately spend more time in the state reformatory than she would have served in the absence of that July 1, 1996 enactment, for the reasons developed herein and in the district court's judgment.