[Cite as *State v. Lawyer*, 2019-Ohio-597.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES: |
| | Hon. Earle E. Wise, Jr., P. J. |
| Plaintiff-Appellee | Hon. John W. Wise, J. |
| | Hon. Patricia A. Delaney, J. |
| -vs- | |
| | Case No. 2018 CA 00030 |
| ROBBIE N. LAWYER | |
| | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:    Criminal Appeal from the Court of Common
                            Pleas, Case No.  2017 CR 00603


JUDGMENT:                   Affirmed


DATE OF JUDGMENT ENTRY:     February 15, 2019


APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

CLIFFORD J. MURPHY                    MICAHEL R. DALSANTO
ASSISTANT PROSECUTOR                  33 West Main Street
20 South Second Street, 4th Floor     Suite 109
Newark, Ohio  43055                   Newark, Ohio  43055

*Wise, John, J.*

**{¶1}** Defendant-Appellant Robbie N. Lawyer appeals his conviction on one count of felonious assault, entered in the Licking County Common Pleas Court following a jury trial.

**{¶2}** Plaintiff-Appellee is the State of Ohio.

<u>STATEMENT OF THE CASE AND FACTS</u>

**{¶3}** On July 20, 2017, Appellant Robbie Lawyer was indicted on one count of felonious assault, in violation of R.C. §2903.11(A)(1)(d)(1)(a), a felony of the second degree.

**{¶4}** The record reflects that the events in question occurred on Thursday, July 6, 2017, at a bar called the "Tap Room" located at 620 East Main Street, Hebron, Licking County, Ohio. The evidence established that this facility does not offer food services and thus, individuals under the age of 21 are not permitted inside the premises. The Tap Room is designated as a non-smoking facility. Individuals desiring to smoke must exit the bar and smoke outside.

**{¶5}** At the time of the events, Appellant Robbie Lawyer was 29 years of age and approximately 5' 10" in height.

**{¶6}** Appellant arrived at the bar in his van with his eleven (11) year-old child. Appellant gave the child some money to purchase some items at the Kroger grocery store nearby while Appellant went inside the bar. Once inside, Appellant drank alcoholic beverages, played music on the juke box, and spoke with other patrons at the bar. (T. at 85).

**{¶7}** Testifying to witnessing the events of the evening were the bartender Savannah Lathes, fellow bar patron Carl Dovenbarger, fellow bar patron Tiffany Ruggles, and investigating Hebron Police Officer Ryan Collins. (T. at 105).

**{¶8}** The victim, Scott Fairchild, arrived at the bar at approximately 6:00-6:30 pm. Mr. Fairchild, 51 years old, was a smoker and during the course of the evening he went outside on several occasions to smoke (T. at 84). It was then that he observed the eleven year old child outside.

**{¶9}** After seeing the child, Mr. Fairchild told Appellant that it was not right for him to be in the bar drinking while his son was outside in the heat. Subsequent to this conversation inside the bar, Mr. Fairchild went outside and was smoking when Appellant came outside the bar and assaulted him.

**{¶10}** Tiffany Ruggles, an Emergency Room nurse, testified that she observed Appellant swing four times at the victim, including after the victim was down on the ground. (T at 112). Ms. Ruggles testified that the victim never threw a punch at Appellant. *Id.* She further testified that when the victim's head hit the concrete it sounded like a loud crack, and that the victim was unconscious. (T. at 113). She recalled that Appellant then hit the victim again. (T. at 113). Ms. Ruggles testified that her boyfriend, Pete Calloway, had to physically pull Appellant off the victim, and after being pulled off the victim, Appellant went right back after the victim, who was still unconscious. (T. at 113). She testified that she took a photograph of Appellant. This photograph was identified and marked and admitted into evidence as State's Exhibit 2. (T. at 114). She testified that the picture captured the young child that waited outside the bar while Appellant was drinking inside. (T. at 115). Ms. Ruggles recalled that the victim was unconscious for 10-15 minutes. (T. at 116).

{¶11} The bartender, Savannah Lothes, testified that she wrote down the Appellant's license plate number and called 911. (T. at 137, 140).

{¶12} Carl Dovenbarger testified that it was hot that evening, and that Appellant was inside the bar drinking when his young son opened the bar door asking to go home. (T. at 151). Mr. Dovenbarger testified that he overheard Appellant having a heated discussion with the victim about his boy being outside in the heat while Appellant was drinking in an air-conditioned bar. (T. at 151-152). Mr. Dovenbarger testified that the victim left the bar shortly thereafter to smoke, and that Appellant followed him outside. (T. at 152). When Mr. Dovenbarger went outside, he observed the victim on the ground, unconscious, and stated "It looked to me like he (the appellant) kicked him ... in the head". (T. at 154). He further testified that Appellant turned to him and asked him if he wanted a part of it. (T. at 155-156).

{¶13} The victim, Scott Fairchild, testified that he was hospitalized from July 6, 2017, through July 24, 2017, from his injuries; that he did not regain conscious awareness for two days; that he has permanently lost his short term memory; that he suffered a brain bleed; that his left side of his jaw was rebuilt with steel bolts as it was crushed/shattered from the assault; and that his jaw was wired shut for a month and a half. (T. at 89-95).

{¶14} Officer Ryan Collins of the Hebron Police testified that he was dispatched to the Tap Room and arrived on scene at approximately 8:16 p.m. and remained on the scene until 9:00 p.m. (T. at 176, 180). The record established that the Police located Appellant through law enforcement database arriving at Appellant's home at 11:29 p.m. (T. at 181). Upon contact with Appellant, Officer Collins testified that the Appellant appeared surprised that they were at his door. (T. at 177, 182, 189).

{¶15} Appellant also testified at trial. He testified that he went to Kroger on July 6, 2017, with his son to pick up a prescription and to purchase groceries. (T. at 197). According to Appellant, the prescription was not ready, so he wrote out a grocery list for his son, handed him a fifty dollar bill, and told him to shop for the items on the list while he went to Tap Room next door to have a "quick beer and a shot." (T. at 199). While at the Tap Room, his son returned but had gotten sausage instead of hamburger. (T. at 200). As a result, Appellant said he gave his son ten more dollars, sent him back to the store, and returned to the bar to pay his tab. (T. at 201). It was at that time, Appellant testified, that he saw his son walking back from the grocery store and witnessed Mr. Fairchild put his hands on his son's neck and shoulders outside the bar. (T. at 201). He stated the he spoke to his son about the interaction and then decided to have a conversation with Mr. Fairchild about it. (T. at 202). Appellant testified that Mr. Fairchild responded by "[throwing] his cigarettes down and lighter on the ground" and then walked up "toe to toe, nose to nose," and said "so what if I did – what do you want to do about it?" (T. at 204). Appellant stated that Mr. Fairchild then "jerked back." (T. at 205). Appellant testified that he believed that Mr. Fairchild was going to "sucker punch" him, and as a result, he hit him one time. (T. at 205). Appellant admitted that he hit him pretty "hard" on the left side of his face and that "[h]e went down pretty hard." (T. at 205). Appellant reiterated that he struck Mr. Fairchild because he believed he was going to hit him. (T. at 206, 209).

{¶16} Appellant testified that Mr. Dovenbarger then came out of the bar and threatened him. (T. at 208). Appellant testified that he left the bar. (T. at 208). He

specifically denied punching Mr. Fairchild multiple times, kicking him or punching him while he was on the ground. (T. at 207, 209).

{¶17} On cross-examination, Appellant admitted that he knowingly punched Mr. Fairchild in the face. (T. at 210). He further admitted that he caused Mr. Fairchild serious physical harm. (T. at 211). Appellant also admitted that his written statement provided to the police did not mention the victim raising a fist at any time. (T. at 220)

{¶18} At the conclusion of the trial and following deliberations, the jury returned a verdict of guilty as charged on the count of felonious assault.

{¶19} On March 19, 2018, the trial court sentenced Appellant to a prison term of four (4) years.

{¶20} Appellant now appeals, assigning the following error for review:

ASSIGNMENTS OF ERROR

{¶21} "I. TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO THE ADMISSIBILITY OF MEDICAL RECORDS AND FOR FAILING TO REFERENCE CERTAIN EVIDENCE DURING CLOSING ARGUMENT.

{¶22} II. THE JURY CLEARLY LOST ITS WAY IN CONVICTING MR. LAWYER OF FELONIOUS ASSAULT AND REJECTING HIS CLAIM OF SELF DEFENSE."

**II.**

{¶23} For ease of discussion, we shall address Appellant's assignments of error out of order.

{¶24} In Appellant's second assignment of error, Appellant argues that the jury's verdict is against the manifest weight of the evidence. We disagree.

**{¶25}** In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, *supra*, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

**{¶26}** In the case *sub judice*, Appellant was convicted of felonious assault, in violation of R.C. § 2903.1.13, which provides:

(A) No person shall knowingly do either of the following:

(1) Cause serious physical harm to another.

**{¶27}** The evidence at trial established Appellant punched the victim in the head and caused him serious physical harm.  Appellant admitted same.

**{¶28}**  Appellant, however, argues that he acted in self-defense. Self-defense is a "confession and avoidance" affirmative defense in which Appellant admits the elements of the crime but seeks to prove some additional element that absolves him of guilt. *State v. White,* 4th Dist. Ross No. 97 CA 2282, 1998 WL 2282 (Jan. 14, 1998). The affirmative defense of self-defense places the burden of proof on a defendant by a preponderance of the evidence. *In re Collier,* 5th Dist. Richland No. 01 CA 5, 2001 WL 1011457 (Aug. 30, 2001), *citing State v. Caldwell,* 79 Ohio App.3d 667, 679, 607 N.E.2d 1096 (4th Dist.1992). The proper standard for determining whether a criminal defendant has

successfully raised an affirmative defense is to inquire whether the defendant has introduced sufficient evidence, which, if believed, would raise a question in the minds of reasonable persons concerning the existence of the issue. *State v. Melchior,* 56 Ohio St.2d 15, 381 N.E.2d 195 (1978), paragraph one of the syllabus.

**{¶29}** To establish self-defense in the use of non-deadly force, the accused must show: 1) he was not at fault in creating the situation giving rise to the altercation; 2) the accused had reasonable grounds to believe and an honest belief, even though mistaken, that some force was necessary to defend himself against the imminent use of unlawful force; and 3) the force used was not likely to cause death or great bodily harm. *State v. Hoopingarner,* 5th Dist. Tuscarawas No. 2010AP 07 00022, 2010–Ohio–6490, ¶ 31, *citing State v. Vance,* 5th Dist. Ashland No. 2007–COA–035, 2008–Ohio–4763, ¶ 77 (citations omitted). If any one of these elements is not proven by a preponderance of the evidence, the theory of self-defense does not apply. *State v. Williford,* 49 Ohio St.3d 247, 249, 551 N.E.2d 1279 (1990).

**{¶30}** Here, the witness testimony together with the victim's testimony and the physical evidence established the necessary elements of the charge of assault.

**{¶31}** As to Appellant's affirmative defense of self-defense, we find Appellant failed to prove that the amount of force he used was necessary to defend himself and/or that the force used was not likely to cause great bodily harm to the victim.

**{¶32}** Here, the jury heard two versions of the events that took place on that day. The jury chose to believe the version of events as presented by the State.

**{¶33}** As an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant,

competent and credible evidence, upon which the fact finder could base his or her judgment. *Cross Truck v. Jeffries,* 5th Dist. Stark No. CA–5758, 1982 WL 2911 (Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction,* 54 Ohio St.2d 279, 376 N.E.2d 578(1978). The Ohio Supreme Court has emphasized: " '[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *.' " *Eastley v. Volkman,* 132 Ohio St.3d 328, 334, 972 N.E.2d 517, 2012–Ohio–2179, *quoting Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191–192 (1978). Furthermore, it is well established that the trial court is in the best position to determine the credibility of witnesses. *See, e.g., In re Brown,* 9th Dist. No. 21004, 2002–Ohio–3405, ¶ 9, *citing State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967).

**{¶34}** Ultimately, "the reviewing court must determine whether the appellant or the appellee provided the more believable evidence, but must not completely substitute its judgment for that of the original trier of fact 'unless it is patently apparent that the fact finder lost its way.' " *State v. Pallai,* 7th Dist. Mahoning No. 07 MA 198, 2008–Ohio–6635, ¶ 31, *quoting State v. Woullard,* 158 Ohio App.3d 31, 2004–Ohio–3395, 813 N.E.2d 964 (2nd Dist.2004), ¶ 81. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke,* 7th Dist. Mahoning No.

99 CA 149, 2002–Ohio–1152, at ¶ 13, *citing State v. Gore,* 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist.1999).

**{¶35}** The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus; *State v. Hunter,* 131 Ohio St.3d 67, 2011–Ohio–6524, 960 N.E.2d 955, ¶ 118. *Accord, Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Marshall v. Lonberger,* 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983).

**{¶36}** The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig,* 10th Dist. Franklin No. 99AP–739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens,* 10th Dist. Franklin No. 95APA09–1236, 1996 WL 284714 (May 28, 1996). Indeed, the jury need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver,* 10th Dist. Franklin No. 02AP–604, 2003–Ohio–958, ¶ 21, *citing State v. Antill,* 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke,* 10th Dist. Franklin No. 02AP–1238, 2003–Ohio–2889, *citing State v. Caldwell,* 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist.1992).

**{¶37}** We find that this is not an " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541, *quoting Martin,* 20 Ohio App.3d at 175, 485 N.E.2d 717. The jury neither lost its way nor created a miscarriage of justice in convicting Appellant of the charge of felonious assault.

**{¶38}** Based upon the foregoing and the entire record in this matter, we find Appellant's conviction is not against the manifest weight of the evidence. To the contrary, the jury appears to have fairly and impartially decided the matters before them. The jury as a trier of fact can reach different conclusions concerning the credibility of the testimony of the witnesses. This Court will not disturb the trier of fact's finding so long as competent evidence was present to support it. *State v. Walker,* 55 Ohio St .2d 208, 378 N.E.2d 1049 (1978). The jury heard the witnesses, evaluated the evidence, and was convinced of Appellant's guilt.

**{¶39}** Appellant's second assignment of error is overruled.

**I.**

**{¶40}** In Appellant's first assignment of error, Appellant argues that he was denied the effective assistance of counsel. We disagree.

**{¶41}** Our standard of review for ineffective assistance claims is set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Ohio adopted this standard in the case of *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. These cases require a two-pronged analysis in reviewing a claim for ineffective assistance of counsel. First, we must determine whether counsel's assistance was ineffective; *i.e.*, whether counsel's performance fell below an objective standard of reasonable representation and was violative of any of his or her essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. This requires a showing that there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have

been different. *Id.* However, trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie* (1998), 81 Ohio St.3d 673, 675, 693 N.E.2d 267.

{¶42} Here, Appellant argues that his counsel was ineffective by failing to object to the admissibility of the victim's medical records documenting his injuries and by failing to refer to the victim's blood alcohol content during his closing arguments.

{¶43} Upon review, we find, as set forth above, Appellant's raised a self-defense strategy at trial. Based on such defense, Appellant admitted to the elements of the charge of felonious assault, arguing instead that his actions were justified based on his beliefs. Because Appellant admitted to the elements, including the serious physical harm element, we find that the admission of the victim's medical records did not prejudice Appellant's defense. Rather, the admission of the medical records allowed for suggestion by Appellant that the victim was intoxicated at the time of the incident.

{¶44} "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689. The question is whether counsel acted "outside the wide range of professionally competent assistance." *Id.* at 690. In assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Id.* at 689, citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158 (1955).

**{¶45}** Appellant has failed to demonstrate how his trial counsel's performance was deficient or that the result of the trial would have been different. Accordingly, he cannot prevail on his claim of ineffective assistance.

**{¶46}** Appellant's first assignment of error is overruled.

**{¶47}** For the foregoing reasons, the judgment of the Court of Common Pleas of Licking County, Ohio, is affirmed.

By: Wise, John, J.

Wise, Earle, P. J., and

Delaney, J., concur.

JWW/d 0129